## In re DEACON PLASTICS MACHINE, INC., Debtor.

### Bankruptcy No. 4-84-00354-G.

United States Bankruptcy Court, D. Massachusetts.

June 27, 1985.

Frederick M. Myers, Cain Hibbard, Myers & Cook, Pittsfield, Mass., for debtor/Deacon Plastics Machine, Inc.

Kearons Whalen, Reder, Whalen & Spina, Pittsfield, Mass., for petitioning creditors.

## MEMORANDUM AND ORDER

### RE: DEBTOR'S MOTION TO DISMISS

PAUL W. GLENNON, Bankruptcy Judge.

This motion comes before the Court on a motion by Deacon Plastics Machine, Inc. (the "Debtor") to dismiss an involuntary petition filed against it by three of its creditors. The petition was filed on July 9, 1984. The Debtor's motion to dismiss was filed shortly thereafter, on July 23, 1984. The motion was scheduled for hearing, then continued and rescheduled, numerous times at the request of the Debtor. The motion was finally argued before this Court on April 23, 1985.

Dismissal, in this instance, is governed by Section 305(a)(1) of the Bankruptcy Code which provides, in relevant part, that the Court, "after notice and a hearing, may dismiss a case ... at any time if—(1) the interests of creditors and the debtor would be better served by such dismissal...." In addition to the best interest of creditors and the debtor, the bankruptcy court should consider the efficiency and economy of administration in determining whether to abstain from hearing a case. 2 Collier on Bankruptcy, ¶ 305.02 at 305-3 (15th ed. 1983); citing *In re Michael S. Starbuck, Inc.,* 14 B.R. 134 (Bankr.S.D.N. Y.1981).

The basic facts in this case are not in dispute. In the Spring of 1981, Andrew Deacon ("Deacon") formed two separate corporations, the Debtor and Deacon Machinery, Inc. ("Machinery"). Deacon then used Machinery to purchase the assets of the Beloit Company, and to purchase some real estate. At all times relevant hereto, Machinery was the owner of all personal property and real estate. The Debtor acted

as the sales and operating company and had, as its principal asset, its accounts receivable.

The purchase of the Beloit assets, and of the real estate upon which the Debtor's business was located, was financed by the First Agricultural Bank of Pittsfield (the "Bank"). Machinery, as part of the transaction, issued a promissory note to the Bank. In order to secure the note, Machinery granted the Bank a security interest in all of its assets. In addition, the Bank required that the Debtor guarantee Machinery's obligation to the Bank. As part of this guarantee, the Debtor also granted the Bank a security interest in any assets that it had or might acquire in the future.

The businesses were not successful, and Deacon eventually returned to England. In February, 1983, James MacDonald and his son, Angus, acquired all of the stock of both the Debtor and Machinery, subject to all liabilities to the Bank. The MacDonalds operated the business from that point until December of 1984 and, despite an attempt at an informal reorganization, they also were unsuccessful.

On July 9, 1984, three creditors of the Debtor filed an involuntary Chapter 7 petition against the Debtor. Shortly thereafter, on July 23, 1984, the Debtor filed a motion to dismiss the petition.

In December of 1984, while the motion to dismiss was still pending (as a result of several continuances requested by the Debtor), Machinery transferred all of its inventory, equipment, and various intangibles to the Bank, in partial satisfaction of its debt. At the same time, the Debtor turned over its accounts receivable to the Bank. In April of 1985, Machinery transferred to the Bank, by deed, its real estate interest.[1]

The Debtor originally based its motion to dismiss on the argument that this Court lacked jurisdiction to hear this case. They have apparently retreated from that position and now argue that it would be in the best interests of both the creditors and the

Debtor for this Court to dismiss the petition. They claim that neither the Debtor, nor Machinery, has any assets, nor do they have any possibility of obtaining any in the future. Both corporations are "debt ladened" and it is the Debtor's contention that, under these circumstances, any time or effort spent in a formal bankruptcy administration would be wasteful.

The petitioning creditors and others, whose claims are in excess of $100,000, oppose the motion to dismiss. They "challenge the relationship between the Debtor and Deacon Machinery, Inc." and are concerned about possible preferences paid by the Debtor.

Under the facts in this case, as they were presented by opposing counsel, the Court feels compelled to dismiss the petition on the grounds that it is in the best interest of both the Debtor and the creditors. *See* 11 U.S.C. § 305(a)(1). In December of 1984, when the assets of the Debtor and of Machinery were turned over to the Bank, Machinery allegedly owed the Bank in excess of 4.5 million dollars. After obtaining appraisals of both the personal property and the real estate, the Bank sold substantially all of the assets. The Bank received $2,519,396.00 from the sale, leaving Machinery with a deficiency of roughly 2 million dollars. This being the case, forcing the Debtor to go through a formal bankruptcy, with the administrative expense that it would entail, is simply not justifiable. *In re Michael S. Starbuck, Inc., supra.*

The petitioning creditors have made vague allegations that there have been "shananigans" in this case and that something "rotten" is going on. They also "challenge the relationship" between the Debtor and Machinery and mention the possibility that preferences were paid by the Debtor. None of these allegations is at all specific, and none of them are substantiated by facts. The Debtor has submitted to the Court a copy of a letter, dated No-

---

1. At the time that these transfers were made, no order for relief had been entered and thus the Debtor could dispose of property as if no involuntary case had been commenced. 11 U.S.C. § 303(f).

vember 6, 1984, in which the attorney for the petitioning creditors was invited to go over the Debtor's records with regard to any possible preference payments. He apparently declined to do so. The Debtor may be criticized for requesting several continuances on his motion to dismiss, but the continuances are not, in themselves, evidence of any wrongdoing on the part of the Debtor. Nor is the fact that the creditors were not aware that the Debtor's only asset was its accounts receivable.

In sum, because the Debtor has no assets, and shows no possibility of obtaining any in the future, and because the creditors' arguments are nothing more than vague allegations, the Court finds that it is in the best interests of the creditors and the Debtor that this petition be dismissed, and any administrative costs of a formal bankruptcy thereby avoided.

SO ORDERED.