## In re BUSINESS INFORMATION COMPANY, INC., Debtor.

**Bankruptcy No. 87–3061.**
**Motion No. 87–6507.**

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 10, 1988.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is a judgment creditor's *Motion To Dismiss* Debtor's Chapter 11 petition, alleging bad faith in the filing. Specifically, he contends that the Debtor filed its bankruptcy petition as a litigation tactic, allowing the automatic stay to operate as a stay pending appeal of a certain District Court action. Debtor asserts that the filing is in good faith and is necessary to protect against additional litigation by other possible claimants, who have not yet instituted actions, but are otherwise similarly situated to the moving creditor.

The parties have submitted briefs and/or cases, and have presented oral argument. Based upon these offers and this Court's further research, we hold that while there does exist substantial evidence to reach a conclusion of bad faith, we find the better alternative to be abstention from the exercise of our jurisdiction, and dismissal of this bankruptcy case pursuant to Section 305 of the Bankruptcy Code. We believe this result will best serve the needs of both the Debtor and the creditors.

### FACTS

John E. Gusdonevich, Jr. (hereinafter "Gusdonevich") filed an action against the Debtor and its individual principals alleging willful violations of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. § 207(a), regarding nonpayment of overtime. This action was filed in June of 1982; while evidence exists that as many as ten (10) other employees were and/or are similarly situated, none of them has brought a similar action.[1] Gusdonevich demanded approximately $90,000.00, including interest and attorney's fees. After several years of protracted litigation, a jury trial was held and a verdict returned in favor of Gusdonevich. After numerous post-trial motions

Peter N. Georgiades, Hess, Reich, Georgiades, Ray & Homyak, P.C., Pittsburgh, Pa., for John E. Gusdonevich, Jr.

David B. Salzman, Campbell & Levine, Pittsburgh, Pa., for Business Information Co., Inc.

1. Debtor asserts the existence of ten (10) such employees. It should be noted however, that Debtor's Schedule listing unsecured claims without priority (A–3) shows only four (4) employees having unliquidated and disputed claims. Additionally, two (2) of the remaining six (6) employees have a family relationship to the principals/shareholders.

were completed, judgment was entered on August 25, 1987, against the Debtor and the individual principals, jointly and severally, in the sum of $37,590.32. The claim for attorney's fees is still pending.

Debtor appealed the judgment but did not seek a stay of same pending the appeal. On October 20, 1987, Gusdonevich attached the Debtor's bank account. It was then that Debtor filed a Motion For Stay Of Execution pending the appeal. In said Motion Debtor asserted that Gusdonevich would not be harmed by maintaining the status quo as the corporation was solvent, and in fact, was presently able to pay the judgment in full, *along with* interest and attorney's fees if necessary. Seventeen (17) days later Debtor filed the within bankruptcy petition. Thereafter, on November 24, 1987, the U.S. District Court entered a Memorandum Opinion and Order denying the stay request.[2]

A review of the Debtor's Statement of Affairs and Schedules offers additional relevant information. As of the filing, Debtor was fully current on the rental of its business premises and current or nearly so on the vast majority of its other debts. Debtor owns no real property, but does own several valuable vehicles,[3] leases seven (7) additional vehicles,[4] and possesses current collectible accounts receivable in excess of $100,000.00.[5]

Debtor owes federal, state and municipal taxes, but none are overdue, nor does it appear that there are any tax liens in place. Debtor also owes its general counsel $10,000.00, but paid its bankruptcy counsel a $10,000.00 retainer to commence this action. During the twelve (12) months immediately preceding the bankruptcy filing, Debtor's three principals were paid a total of $211,199.76.[6]

## ANALYSIS

Chapter 11 bankruptcy cases can be dismissed through two separate and distinct vehicles, to wit: the Court may find that the Debtor filed the petition in bad faith, and that dismissal is appropriate pursuant to § 1112(b) of the Code. Alternatively, the Court may find that dismissal is appropriate because this Court should not have taken jurisdiction from the outset; and that such an "abstention/dismissal" would be in the best interests of all parties. 11 U.S.C. § 305. Each section will be discussed seriatum.

■ Section 1112(b) states in pertinent part:

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of the title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of a request

---

**2.** Debtor's bankruptcy petition having been filed prior thereto, the U.S. District Court's Order is effective against the individual principals only.

**3.** Debtor's Statement of Financial Affairs states ownership of five (5) vehicles; however, Schedule B–2(f) lists ownership of seven (7) vehicles. Said vehicles are partially encumbered.

**4.** The leased cars include a 1986 Mercedes 190E Sedan and two (2) 1988 Pontiacs.

**5.** Debtor advised this Court, at a hearing on November 20, 1987, that its accounts receivable were excellent and *most,* if not all, were *fully* collectible.

**6.** Debtor's valuation of various office equipment is also worthy of note, i.e. Debtor lists 22 desks with a *total* value of $220.00, 27 chairs with a *total* value of $135.00, and 29 file cabinets with a *total* value of $145.00. While the veracity of these figures is questionable, we acknowledge same only to the extent that these nominal figures impact on the total value of Debtor's assets, and therefore its solvency.

made for additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan;

(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10) nonpayment of any fees or charges required under chapter 123 of title 28.

 This list is not exhaustive; the Court has the discretion to consider other factors as they arise, on a case-by-case basis. *Matter of Young,* 76 B.R. 376 (Bankr.D.Del.1987); *Matter of Roy Dawson Radio Corp. Inc.,* 70 B.R. 588 (Bankr. M.D.Fla.1987); *In re Asbridge,* 61 B.R. 97 (Bankr.D.N.D.1986). While lack of good faith in the filing is not one of the enumerated factors, it is axiomatic that good faith is a requirement for proceeding with a Chapter 11 petition. *Matter of Young, supra; In re Clinton Centrifuge,* 72 B.R. 900 (Bankr.E.D.Pa.1987); *Matter of Roy Dawson Radio Corp. Inc., supra; In re Karum Group, Inc.,* 66 B.R. 436 (Bankr. W.D.Wash.1986); *In re Asbridge, supra; In re Smith,* 58 B.R. 448 (Bankr.W.D.Ky. 1986). The existence or lack of good faith is determined by an examination of all pertinent facts and circumstances. *Matter of Young, supra; In re Ford,* 74 B.R. 934 (Bankr.S.D.Ala.1987); *Matter of Roy Dawson Radio Corp. Inc., supra; In re Cooper Properties Liquidating Trust, Inc.,* 61 B.R. 531 (Bankr.W.D.Tenn.1986). Once lack of good faith is raised by a party in interest as cause for dismissal of the case, the debtor bears the burden of proving good faith in the filing. *Stage I Land Company v. U.S. Dept. of Housing and Urban Development,* 71 B.R. 225 (D.Minn. 1986); *In re Noco, Inc.,* 76 B.R. 839 (Bankr.N.D.Fla.1987).

Several courts have held that the filing of a bankruptcy petition as a litigation tactic, or to resolve what is essentially a two-party dispute, is an indication of a bad faith filing. *In re Noco, Inc., supra; Stage I Land Company, supra; In re Cooper Properties Liquidating Trust, Inc., supra.* In *In re Noco, supra,* at 845, the Court dismissed the bankruptcy petition; a major factor in that decision was the Court's finding that the Debtors were:

... clearly attempting to use the reorganization process to litigate non-bankruptcy issues and to avoid the burdens of a contract ...

Similarly, in *Young, supra,* the Court's dismissal was founded on the fact that the Debtor filed her Chapter 11 petition in an attempt to stop a Court-ordered award of specific performance. *In Stage I Land Company, supra,* the filing of the bankruptcy enabled the Debtors to obtain a stay of a foreclosure order which was twice denied by the District Court, all the while obviating the need for the posting of a supersedeas bond. The Court therefore dismissed the bankruptcy as having been filed in bad faith. *See also In re Karum Group, Inc., supra* and *In re Smith, supra,* wherein both courts dismissed petitions which were found to be tactical attempts to stay the ramifications of non-bankruptcy litigation without the requirement of posting a supersedeas bond.

In those cases wherein dismissal for bad faith was denied, the primary consideration was whether the judgment creditors claim was so large as to single-handedly vitiate the debtor's existence, *In re Alton Telegraph Printing Company,* 14 B.R. 238 (Bankr.S.D.Ill.1981) ($9.2 million libel judgment); in some cases the financial devastation and resultant liquidations would have had severe repercussions on public policy. *In re A.H. Robins, Inc.,* 65 B.R. 160, 164 n. 5 (E.D.Va.1986) (300,000 Dalkon Shield claimants); *In re Johns–Manville Corporation,* 36 B.R. 727 (Bankr.S.D.N.Y.1984) (necessary to reserve $1.9 billion for contingent liability on asbestosis claims).

The case at bar is clearly more analogous to the former group of cases than the

latter. The two parties to this action have been embroiled in intense litigation for almost five (5) years. After substantial delay in discovery, apparently caused in part by Debtor's distaste for cooperation, a jury trial was held. The verdict of the jury was fully in favor of Gusdonevich. Debtor appealed the verdict, but *did not* seek a stay pending appeal—not until Gusdonevich proceeded to execute upon his judgment. At a hearing on said motion for stay, Debtor advised the District Court that it was financially solvent enough to pay the judgment *as well as* interest and fees immediately if necessary, but was concerned about recouping same from Gusdonevich if Debtor succeeded on appeal. Yet, before that Court could rule, Debtor filed its Petition in Bankruptcy.

■ Thereafter, the Court entered a Memorandum Opinion and Order, unequivocally denying the stay pending appeal, stating that the Movants "... failed to show any probability of prevailing on appeal ...", and "... failed to show that the denial of the stay will cause them irreparable harm ..."; the District Court also found "... that the granting of a stay will harm the plaintiff." *John E. Gusdonevich, Jr. v. Business Information Co., et. al.,* — B.R. ——, No. 82–1037, slip. op. (W.D.Pa. November 24, 1987).[7] The Court believes Debtor sought the protection of the automatic stay, fearing that its motion would be denied.

■ Debtor attempts to defend against the bad faith claim by arguing that the other ten (10) employees, similarly situated to Gusdonevich, conceivably might file similar claims; and that the effect of all of these claims significantly changes the magnitude of the potential liability, putting this Debtor in the same relative position as *Alton Telegraph, A.H. Robins,* and *Johns–Manville, supra.* This is not a convincing argument.

Manville's good faith filing was measured by the existence of massive unmanageable *Real Debt* owed to *Real Claimants.* In the case at hand, there was no massive unmanageable real debt owed to real claimants. At best debtor's case is based upon speculation.

Also, the particular section of the FLSA under which Gusdonevich has sued, carried with it a two (2) year statute of limitations. As the filing of the bankruptcy tolls the statute, those violations occurring between September 9, 1985 and November 9, 1987 remain actionable.[8] In the last five years since Gusdonevich initiated suit, none of these other ten (10) employees has made any attempt or shown any interest in filing a similar complaint;[9] nor does it appear likely that any of these people will do so, *unless and until* the appellate court affirms the jury verdict. If the bankruptcy case is dismissed, the statute of limitations will again begin to run, and by the time the appeal is decided, a substantial portion of the actionable violations will have been lost to these possible claimants who have determined to sit upon their rights.

Based upon the above, this Court could find cause sufficient to dismiss this case pursuant to § 1112(b). However, as previously stated, the analysis applied in the discussion of § 1112(b) leads this Court to the conclusion that we should relinquish jurisdiction pursuant to § 305.

■ Section 305 of the Bankruptcy Code states in pertinent part:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension;

Through this section Congress acknowledged that in certain cases this Court *should* decline jurisdiction. As with

---

7. Since this Opinion and Order were entered postpetition, they are not binding upon the Debtor; nevertheless, the arguments still carry great persuasive value.

8. The Debtor has asserted that the practices employed by the Debtor have changed so that the violations will not continue postpetition.

9. Debtor asserts otherwise, but has provided us with no evidence in support of its statement.

§ 1112(b), the decision to so hold is discretionary and must be made on a case-by-case basis. *Matter of Fitzgerald Group,* 38 B.R. 16 (Bankr.S.D.N.Y.1983); *In re International House of Pancakes,* 22 B.R. 926 (Bankr.N.D.Ill.1982).

The chief concern in such an analysis is whether such a dismissal/abstention will serve the best interests of both the Debtor and the creditors. *In re Safon Ochart,* 74 B.R. 131 (Bankr.D.P.R.1986); *In re Cooper Properties Liquidating Trust Inc.,* 61 B.R. 531 (Bankr.W.D.Tenn.1986); *In re Michael S. Starbuck, Inc.,* 14 B.R. 134 (Bankr.S.D. N.Y.1981). One court has held that abstention under § 305 is appropriate when a controversy arises on an unsettled issue of non-bankruptcy law. *Matter of Condominium Association of Plaza Towers South Inc.,* 43 B.R. 18 (Bankr.S.D.Fla. 1984). Other courts have held that § 305 abstention is appropriate when another forum is available to determine the parties' interests, and in fact such an action has been commenced. *In re Mineral Hill Corporation,* 16 B.R. 687 (Bankr.D.Md.1982); *In re Sun World Broadcasters, Inc.,* 5 B.R. 719 (Bankr.M.D.Fla.1980).

A significant number of courts have stated that economy and efficiency of administration must be key considerations in the abstention decision. *In re Safon Ochart, supra; In re Deacon Plastics Machine, Inc.,* 49 B.R. 982 (Bankr.D.Mass.1985); *In re International House of Pancakes, Inc., supra; In re Michael S. Starbuck, Inc., supra; In re Sun World Broadcasters, Inc., supra.*

In the case at bar, we essentially have two parties who have spent almost five (5) years and tens of thousands of dollars in legal fees in the pursuit of this FLSA action. The issue is claimed by the Debtor to be one of first impression in this Circuit, and therefore will probably be vigorously handled on appeal, at a substantial additional cost of time and fees. Furthermore, the filing of the bankruptcy petition has already cost the Debtor $10,000.00 in legal fees; this Court is reasonably certain that this bankruptcy would not be short-lived; and substantially larger fees will be requested if this case remains.

The present case meets all three of the criteria discussed by the previously cited cases: (1) an issue of unsettled law; (2) the availability of another forum; and (3) a need to arrest the continuing dissipation of time and money.

Additionally, with the bankruptcy removed, and the recommencing of the FLSA statutory time period, the Debtor will soon be able to state with certainty that Gusdonevich's claim is the only one it must face.

Finally, Gusdonevich has waited several years for his money. The District Court's Order denying the stay pending appeal is an indication that said Court found he has waited long enough. Since it is clearly in the best interest of both parties, this Court will abstain from retaining jurisdiction and will dismiss the case.

An appropriate Order will be issued.