In re MONSOUR MEDICAL
CENTER, INC., Debtor.

MONSOUR MEDICAL CENTER,
INC., Plaintiff,

v.

Robert B. STEIN, Receiver, Defendant.

Robert B. STEIN, Receiver for Monsour Medical Center, Inc., Movant,

v.

MONSOUR MEDICAL CENTER, INC., BOARD OF DIRECTORS; Terry L. Painter; Dante Bertani; Roy C. Monsour; Philip Abbott; Philip Roy, Sr.; and James Monzo, Respondents.

UNITED STATES TRUSTEE, Movant,

v.

MONSOUR MEDICAL CENTER,
INC., Respondent.

Howard P. MONSOUR, Sr., individually and in his capacity as Indenture Trustee; and Robert G. Monsour, Movants,

v.

MONSOUR MEDICAL CENTER, INC., BOARD OF DIRECTORS; Terry L. Painter; Dante Bertani; Roy C. Monsour; Philip Abbott; Philip Roy, Sr.; and James Monzo, Respondents.

Bankruptcy No. 93–21353–BM.
Adv. No. 93–2218–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 12, 1993.

Jack R. Pigman, Teri G. Rasmussen, Porter, Wright, Morris & Arthur, Columbus, OH, for debtor.

Robert O Lampl, Pittsburgh, PA, for Robert B. Stein, receiver.

Kathleen Robb–Singer, Office of U.S. Trustee, Pittsburgh, PA, Robert D. Mons-

our, Murrysville, PA, for Howard P. Monsour and Robert G. Monsour.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor has been wracked by a fractious dispute among several members of the Monsour family which has paralyzed its board of directors and rendered it incapable of effectively governing debtor. In response to this deplorable situation, the Court of Common Pleas of Westmoreland County, Pennsylvania ("state court"), appointed a receiver to manage debtor's affairs and to procure a buyer.

Several matters are before the court at this time.

Debtor has brought an adversary action against the receiver, Robert B. Stein, pursuant to 11 U.S.C. § 543 wherein it seeks an order directing the receiver to turn over its assets to it and to render an accounting. The obvious unspoken purpose of the adversary action is to have the receiver ousted and to have control of debtor returned to a faction of its board of directors to the exclusion of the other faction.

The receiver has filed a motion pursuant to 11 U.S.C. § 305 to dismiss this bankruptcy case or to abstain. According to the receiver, the interests of debtor and of its creditors would be better served by dismissal or abstention. The receiver alternatively avers that the case should be dismissed for cause pursuant to 11 U.S.C. § 1112(b) because it was filed in bad faith. According to the receiver, the case should be dismissed because it was filed as a blatant attempt by one faction of debtor's board of directors to reverse setbacks it has suffered in state court in its ongoing dispute with the receiver and with the opposing faction of debtor's board of directors.

The United States Trustee, as well as Howard P. Monsour and Robert G. Monsour, bondholders having a first claim to debtor's assets, also have filed motions to dismiss or to abstain. The grounds offered in support of their respective motions are basically identical to those presented by the receiver.

The chapter 11 petition will be dismissed for reasons set forth in this memorandum opinion. In light of this resolution, it will not be necessary to address debtor's turnover action or any other matter that presently is pending in this bankruptcy case.

## –I–

### FACTS

Debtor owns and operates a hospital located in Jeannette, Pennsylvania.

This is not the first time that debtor has been in bankruptcy. Its initial sojourn lasted for nearly a decade and ended less than four (4) years ago.

Debtor filed its first voluntary chapter 11 petition at Bankruptcy No. 80–261 on February 22, 1980. As might be expected in a case that lasted for nearly a decade, debtor made little or no progress for a considerable period of time towards confirmation of a plan of reorganization.

After the case had languished for more than eight (8) years, and at the suggestion of the court, the United States Trustee moved in September of 1988 to convert the case to a chapter 7 proceeding. An order was entered by this court on October 18, 1988, converting the case to a chapter 7 proceeding as of December 19, 1988, unless debtor had submitted a disclosure statement and plan of reorganization by that date.

Debtor, apparently stung by the prospect of liquidation under chapter 7, submitted a disclosure statement and plan of reorganization in time to avoid conversion. Its fourth amended plan of reorganization was finally confirmed on July 13, 1989.

On November 1, 1989, the City Of Jeannette Health Services Authority ("authority") issued revenue bonds in the amount of $19,000,000.00. The revenues generated then were loaned to debtor, which in turn executed a loan and security agreement in favor of the authority. Debtor also grant-

ed the authority a first mortgage against its facility as security. Fidelity Bank, National Association ("Fidelity"), was designated as the indenture trustee to whom the authority's interest in the loan agreement and mortgage were assigned.

Problems relating to debtor's governance occurred around the time the bonds were issued. Monsour Medical Foundation, which controls debtor, petitioned the state court to appoint a custodian to take charge of the hospital's operations. The petition alleged, among other things, that debtor's board of directors was incapable of making decisions and of taking actions in debtor's best interest due to misconduct by debtor's management.

The state court became convinced that a basis existed for taking definitive action and appointed a custodian in December of 1990. Debtor's problems unfortunately did not abate with the appointment of the custodian, who eventually resigned in frustration. A successor custodian was appointed in April of 1991 and was given additional authority to pursue a sale of debtor's assets. The order appointing the successor custodian provided that management of debtor was to be returned to its board of directors on October 31, 1991 if no sale had been consummated by then.

Debtor defaulted on its obligation with respect to repayment of the bond, whereupon the entire debt was accelerated. In excess of $16,000,000.00 was and is due and owing.

Fidelity, the indenture trustee, filed a petition in state court in October of 1991 to appoint a liquidating receiver shortly before control of debtor was to be returned to its board of directors. An order was issued by the state court in October of 1991 appointing the successor custodian as liquidating receiver. However, the order was stayed pending negotiations among several interested parties.

Negotiations ultimately resulted in a joint stipulation whereby Robert B. Stein was to be appointed as receiver of debtor until January 31, 1992. He was not, however, to be appointed as a liquidating receiver. It was further agreed that William Monsour, Roy C. Monsour, Howard P. Monsour, and Robert G. Monsour would purchase the above bonds from Fidelity for the sum of $3,000,000.00. The stipulation further provided that a non-refundable down payment of $250,000.00 was to be made by November 27, 1991, with the balance of $2,750,000.00 to be paid on the closing date of January 31, 1992. Fidelity's status as indenture trustee was to terminate at the closing.

Pursuant to the terms of the joint stipulation, each of four members of the Monsour family contributed twenty-five percent (25%) of the required $250,000.00 down payment. The remaining $2,750,000.00, however, was tendered at the time of closing by Howard Monsour, Robert G. Monsour, and Roy C. Monsour. William Monsour did not contribute anything at the closing.[1] Howard P. Monsour, Sr. subsequently was selected as the new indenture trustee.

An order subsequently was issued by the state court on June 23, 1992 which, among other things, continued the authority of the receiver until July 17, 1992, whereupon control of debtor was to revert to its board of directors.

In September of 1992, some two (2) months after control of debtor had reverted to its board of directors, Howard Monsour and Robert G. Monsour petitioned the state court as majority bondholders to reinstate the receiver in accordance with the terms of his prior appointment. Petitioners alleged that unresolved disputes concerning ownership and governance of debtor had made it impossible for debtor to effectuate either an internal reorganization or an affiliation with another health care institution. The faction of debtor's board of directors which was under the sway of William Monsour vigorously opposed the petition.

---

**1.** William Monsour is the leader of the faction of debtor's board of directors that authorized the filing of this bankruptcy petition. Howard Monsour and Robert G. Monsour are associated with the other faction.

An order was entered by the state court on September 18, 1992 appointing Robert Stein as receiver once again for a period of twenty-one (21) days. The order stated that the receiver was to have the power and authority to operate and to control debtor's affairs. Included among the authority granted to the receiver was authority to initiate and to settle all lawsuits involving debtor. That same order expressly barred debtor's board of directors from initiating any litigation on debtor's behalf without obtaining the receiver's written approval.

On October 13, 1992, another order was issued by the state court which continued the receiver in authority and gave him additional authority to negotiate with other tertiary health care institutions for the sale of the hospital as a going concern. The order further provided that the prior order of September 18, 1992 was to remain in full force and effect in all other respects. The state court apparently concluded that debtor's governance problems were insoluble and decided that a sale of its facility was the most sensible course of action.

As has been noted, a majority of debtor's board of directors opposed the reinstatement of the receiver in September of 1992. Their opposition to his appointment led them to attempt to have him removed from office. A petition, purportedly on behalf of debtor, to remove the receiver or to appoint another receiver was filed in state court on December 22, 1992.

The state court issued an order on January 15, 1993, directing that the petition to remove the receiver be amended to delete debtor as the moving party and to reflect those persons or entities other than debtor or its board of directors on whose behalf the petition was brought. An amended petition to remove the receiver subsequently was filed on behalf of: Terry L. Painter; Dante Bertani; Roy C. Monsour; Philip Abbott; Philip Roy; and James Monzo. They brought the petition as **individuals,** not as debtor's board of directors, thus circumventing the state court's order of September 18, 1992, which barred the board of directors from initiating litigation without the receiver's approval.

On February 5, 1993, before the state court had rendered a decision on the petition to remove the receiver, the receiver filed a petition to accept an offer by Laurel Health Systems, Inc., to purchase debtor's assets for $6,750,000.00.

Shortly thereafter, the individual board members who had sought removal of the receiver stated their opposition to the receiver's request for authorization to consummate a sale to Laurel Health Systems. They offered a so-called "plan of revitalization" of their own as an alternative to the proposed sale. Among other things, their plan contemplated replacing the receiver with another receiver.

An order was issued by the state court on February 17, 1993 which, among other things, continued the receiver's authority. The order also set forth terms and conditions that any offer to purchase debtor's assets must contain.

The state court also orally rejected the above "plan of revitalization" at or about the same time as it continued the authority of the receiver.

Laurel Health Systems rescinded its offer to purchase debtor's assets for $6,750,000.00 shortly after the order of February 17, 1993 was issued.

On March 8, 1993, approximately three (3) weeks after it had rescinded its previous offer, Laurel Health Systems made a revised offer to purchase debtor's assets for $6,500,000.00, some $250,000.00 less than the amount of its previous offer. The receiver promptly petitioned the state court to authorize the sale free and clear of all liens and encumbrances. A hearing on the proposed sale to Laurel Health Systems has been scheduled by the state court for June 12, 1993.

A meeting of debtor's board of directors was held on April 13, 1993. A bare majority of the board—i.e., six of eleven members—voted in favor of a resolution to file a chapter 11 petition "if the legal situation with the receiver and other court proceeding could not be resolved in Westmoreland

County Court the next day". The six members of the board voting in favor of the resolution are those who had tried several months before without success to have the trustee removed: Terry L. Painter; Dante Bertani; Roy C. Monsour; Philip Abbott; Philip Roy; and James Monzo.

The majority bondholders, like the above majority of debtor's board of directors, are adamantly opposed to a sale of debtor's assets to a third party and have presented a so-called "workout plan" to reorganize debtor as an alternative to a sale. On April 14, 1993, the day after the board of directors voted in favor of a resolution to file a bankruptcy petition, the state court issued a rule to show cause why the proposed "workout plan" should not be approved and scheduled a hearing on the matter for May 12, 1993.

Matters before the state court on April 14, 1993 evidently were not resolved in a manner that was acceptable to a majority of debtor's board of directors. As a result, debtor filed another voluntary chapter 11 petition in this court on April 16, 1993. The petition was signed on debtor's behalf by Terry L. Painter in his capacity as chairman of debtor's board of directors.

On April 20, 1993, debtor filed the above turnover action against the receiver at Adversary No. 93–2218–BM.

On April 23, 1993, the receiver filed the above motion to dismiss or to abstain at Motion No. 93–0796M.

On April 27, 1993, the United States Trustee filed the above motion to dismiss at Motion No. 93–0812M.

On April 28, 1993, Howard P. Monsour, Sr. and Robert G. Monsour filed the above motion to dismiss at Motion No. 93–0846M.

An emergency hearing was held on all of these matters on April 30, 1993. All parties were given the opportunity at that time to present any evidence they considered appropriate.

## –II–

## ANALYSIS

Two issues have been raised by the parties in connection with the above motions to dismiss or to abstain:

(1) whether dismissal or abstention of the bankruptcy petition would be in the better interest of debtor and of its creditors; and

(2) whether the bankruptcy petition should be dismissed because it was filed in bad faith.

### A. Better Interest Of Debtor And Of Its Creditors

The receiver, the United States Trustee, and Howard P. Monsour and Robert G. Monsour maintain that the present chapter 11 petition should be dismissed pursuant to 11 U.S.C. § 305, which provides in pertinent part as follows:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension....

(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of title 28 [28 U.S.C. §§ 158(d), 1291, or 1292] or by the Supreme Court of the United States under section 1254 of title 28 [28 U.S.C. § 1254].

 Congress undoubtedly recognized by enacting section 305 that a bankruptcy court in certain instances should decline to exercise jurisdiction over a case even when it has jurisdiction. *See In re Business Information Company, Inc.*, 81 B.R. 382, 386 (Bankr.W.D.Pa.1988).

 Relief is to be granted pursuant to section 305 only in "egregious situations" in light of subsection (c). *See In re Sky Group International, Inc.*, 108 B.R. 86, 91 (Bankr.W.D.Pa.1989). A determination under this provision must be made on a case-by-case basis. *See In re O'Neil*

*Village Personal Care Corp.*, 88 B.R. 76, 79 (Bankr.W.D.Pa.1988).

■ As the express language of subsection (a)(1) makes clear, dismissal is appropriate only when the interest of both debtor *and* its creditors would be better served by such an outcome. *See In re Marker*, 133 B.R. 340, 344–45 (Bankr.W.D.Pa.1991). The interest of creditors and debtor are to be served. The interest of the board of directors of debtor or a majority faction thereof are not mentioned and play no part in the analysis. To the contrary, it may be that the interest of the individual board members are in conflict with debtor and its creditors.

■ Debtor's interest would be better served by dismissal of this case. It is highly unlikely that debtor will put together a confirmable plan of reorganization if it remains in bankruptcy. The majority bondholders, who hold secured claims in excess of $16,500,000.00, almost certainly will vote against any plan proposed by debtor. A "cramdown" pursuant to 11 U.S.C. § 1128(b) is unlikely. Unless some other party comes forward with a confirmable plan, which alternative cannot be presumed, debtor's liquidation under chapter 7 is highly probable.

The "workout plan" proposed by the majority bondholders in the receivership proceedings offers the only chance, however remote, that debtor has of avoiding liquidation. It is likely that the "workout plan" will evaporate, however, if debtor remains in bankruptcy. The majority bondholders will not have an opportunity to present their plan in this court for at least one hundred and twenty (120) days from the filing because debtor enjoys the exclusive right to present a plan of reorganization during that period. *See* 11 U.S.C. § 1121(b). Also, they will not have an opportunity to present their plan in state court because those proceedings have been automatically stayed pursuant to 11 U.S.C. § 362.

Time is "of the essence" with respect to the "workout plan". It almost surely will be withdrawn if its consideration is delayed. Lenders who have committed to funding the plan almost certainly will withdraw their commitments if the proposal is not approved in the very near future.

The interests of debtor's creditors also will be better served by dismissal of this case.

As has been noted, it is reasonable to anticipate that this case will be converted to a chapter 7 proceeding if it is not now dismissed because debtor almost certainly will fail to put together a confirmable plan of reorganization. The only estate asset having significant value is debtor's medical facility, which is subject to a first mortgage held by the majority bondholders. It is doubtful that distribution would be made in the event of a chapter 7 liquidation to any prepetition creditor other than the majority bondholders. All other prepetition creditors could expect to receive nothing by way of distribution. If this case were to be dismissed, however, there remains at least a chance that the "workout plan" will be approved in the receivership proceeding and that prepetition creditors who otherwise would receive nothing in this court will fare better.[2]

■ Dismissal pursuant to section 305 is especially appropriate when another forum is available to determine the parties' interests and an action has been commenced in that forum. *See In re O'Neil Village*, 88 B.R. at 80. Parties presently before this court also are before the state court. There is no doubt that under the guidance of the learned state court judge, the Honorable Gary P. Caruso, appropriate relief can be fashioned. Accordingly, the present bankruptcy case will be dismissed pursuant to § 305(a)(1).

### B. *Bad Faith Filing*

The receiver and Howard P. Monsour and Robert G. Monsour also assert that

2. Debtor's anticipated revenues will not be sufficient for it to make adequate protection payments to the majority bondholders if this case is not dismissed. A request by the bondholders for relief from the automatic stay in order to pursue a foreclosure action would probably be granted. If that happens, conversion to chapter 7 is inevitable.

this bankruptcy case should be dismissed because it was commenced in bad faith.

A chapter 11 bankruptcy petition may be dismissed "for cause" pursuant to 11 U.S.C. § 1112, which provides in pertinent part as follows:

> (b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;
>
> (3) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
>
> (5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;
>
> (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;
>
> (7) inability to effectuate substantial consummation of a confirmed plan;
>
> (8) material default by the debtor with respect to a confirmed plan;
>
> (9) termination of a plan by reason of the occurrence of a condition specified in this the plan; or
>
> (10) nonpayment of any fees or charges required under chapter 123 of title 28.

■ This list is not exhaustive. Other considerations may justify dismissing a chapter 11 case "for cause" in accordance with this provision. *See In re Business Information Co.*, 81 B.R. at 385.

■ Good faith is a requirement for the filing of a chapter 11 petition, which has as its ultimate objective debtor's suc-cessful rehabilitation. A chapter 11 petition may be dismissed "for cause" pursuant to section 1112(b) if it has been filed in bad faith. *Id.* The determination whether a filing is in bad faith can be made only on a case-by-case basis and depends on the facts and circumstances peculiar to that case. *Id.* Filing a bankruptcy petition as a tactic to litigate non-bankruptcy issues or to resolve a dispute indicates bad faith. *Id.*

■ Review of the facts and circumstances surrounding this case compels the conclusion that the bankruptcy petition was filed as a litigation tactic by one faction of debtor's board of directors in an attempt to reverse the setbacks it had suffered in state court. As has been noted, this faction of debtor's board of directors has been opposed to the reappointment of the receiver since September of 1992 and has been rebuffed repeatedly in its attempts to have him ousted. It unsuccessfully opposed the petition of the majority bondholders in September of 1992 to reappoint the receiver. A petition ostensibly on behalf of debtor to remove the receiver was presented in state court on December 22, 1992. Pursuant to an order issued by the state court on January 15, 1993, the petition subsequently was amended and refiled on behalf of the same individuals on debtor's board of directors who also voted on April 13, 1993 in favor of filing the present bankruptcy petition. Their amended petition was denied by the state court on February 17, 1993.

The ineluctable conclusion is that this faction of debtor's board of directors authorized the filing of the present bankruptcy petition as a means of prevailing in its dispute with the receiver by reversing previous failures to have him ousted in state court. It has shown bad faith in so doing.

The matter does not end there, however. There is yet another respect in which the bankruptcy petition was filed in bad faith.

This faction of debtor's board of directors also has been locked in combat with the majority bondholders. As has been noted, both the majority of debtor's board of directors and the majority bondholders have been opposed to the receiver's propos-

al to sell debtor's facility as a going concern to a third party.

This faction of debtor's board of directors and the majority bondholders have not, however, been united in this regard. Each has proposed its own plan as an alternative to a sale. The "plan of revitalization" proposed by the majority of debtor's board of directors already has been rejected by the state court. The "workout plan" proposed by the majority bondholders had not yet been ruled upon when the present bankruptcy petition was filed.

The majority of debtor's board of directors is seeking to have its already rejected "plan of revitalization" reconsidered by this court to the exclusion of the rival "workout plan". Moreover, the present majority of debtor's board of directors probably would be ousted and would not be in a position to control debtor if the "workout plan" were to be approved by the state court. The filing of the present chapter 11 petition is nothing more than an artifice on the part of the majority of debtor's present board of directors to prevail over the majority bondholders in their struggle for control of debtor.

In summary, the majority of debtor's board of directors have demonstrated bad faith by engaging in blatant forum shopping. They have authorized the filing of a chapter 11 petition on debtor's behalf in order to prevail in their internecine disputes with the receiver and with the majority bondholders by reversing setbacks they have suffered in another forum. Such conduct is inappropriate and must not be permitted. Accordingly, the chapter 11 bankruptcy petition filed on April 16, 1993 also will be dismissed because it was filed in bad faith.[3]

---

**3.** The receiver and the majority bondholders also maintain that the bankruptcy petition should be dismissed because debtor's board of directors was without legal authority to authorize the filing of the petition. The resolution authorizing the filing was in violation of an order of the state court barring them from initiating any litigation without obtaining the receiver's approval. This issue need not be addressed in light of the determination that the interests of debtor and of its creditors would be better served by dismissal and the determination that the filing was in bad faith.