### In re FORTRAN PRINTING, INC., Alleged Debtor.

#### No. 03–14231.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

July 11, 2003.

Carrie M. Caldwell, Vorys, Sater, Seymour & Pease, LLP, Harry W. Greenfield, Cleveland, OH, for Debtor.

Jeffrey M. Levinson, Margulies & Levinson, LLP, Cleveland, OH, Randy T. Slovin, Cincinnati, OH, Mark J. Stauber, Winfield, IL, Darrin Toney, Brennan, Manna & Diamond, LLC, Akron, OH, Patrick J. Alcox, Cleveland, OH, for Petitioning Creditor.

## *ORDER*

RANDOLPH BAXTER, Bankruptcy Judge.

The matter before the Court is an evidentiary hearing on the following: 1) the filing of an involuntary petition by General Electric Capital Business Asset Funding Corporation (GECBAF), Spiral of Ohio, LLC, and Xpedx, Inc. (the "Petitioning Creditors") against the alleged debtor Fortran Printing, Inc. (Fortran) and 2) Motions to Dismiss the Involuntary Petition filed by Fortran, Mark E. Dottore (Receiver), and FirstMerit Bank (FirstMerit). The Court acquires core matter jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 157(a) and (b), 28 U.S.C. § 1334, and General Order Number 84 of this District. Upon review of the testimony and record, generally, the following findings and conclusions are made:

On April 7, 2003, GECBAF, Mancenas Construction Company, Inc. ("Mancenas"), Xpedx and Spiral of Ohio ("Spiral")(collectively "The Petitioning Creditors") filed the above-styled involuntary petition under Chapter 7 proceedings alleging Fortran was generally not paying its debts as they became due.[1] GECBAF is a secured creditor with an alleged purchase money security interest in one piece of printing equipment, known as the Harris Press. GECBAF declared Fortran in default of its loan and security agreement on April 26, 2002, for failure to render payments pursuant to the loan from November 2001 through May 2002. GECBAF filed its initial claim in the federal court for this District on May 24, 2002. The Receiver, who was appointed in state court prior to the filing of this case, consented to a default judgment on this pre-receivership debt. The federal court subsequently stayed the hearing on damages. Spiral purportedly obtained a state court judgment in the amount of $26,336.03. Xpedx filed an action in state court alleging $463,920.01 due and owing on its loan. The Xpedx action is still pending. Manasces has an unsecured claim in the amount of $18,000.00, but has not filed any other judicial action against Fortran.

The Receiver, Fortran, and FirstMerit each filed a motion to dismiss the involuntary petition. Each motion incorporates

---

**1.** Transil Wrap, Inc. was added as an involuntary petitioning creditor on June 16, 2003.

the language of the Receiver's motion to dismiss. The Receiver contends GECBAF is a secured creditor of Fortran with an alleged purchase money security interest in only one piece of equipment known as the Harris M1000–A printing press. The Receiver alleges that he has provided the petitioning creditors with information to apprise them of Fortran's solvency and progress towards payment of their claims. The petitioning creditors have received the filed reports required under Ohio law. Spiral conducted business with the Debtor post-receivership and was paid accordingly. In addition, the Receiver contends that he agreed that he would coordinate with GECBAF on the immediate sale of its collateral (the Harris press) to any bona fide purchaser. This proposal was presented and approved by GECBAF. The Harris press was subsequently sold for $500,000.00. Lastly, the Receiver argues that GECBAF, in particular, never pursued its state court remedies, including a replevin action. The Receiver, as well as Fortran and FirstMerit, urges the Court to dismiss the case under Section 305 of the Code, in light of Fortran's post-receivership solvency status and a postpetition settlement which was duly-executed by the parties.

I.

Prepetition, on May 6, 2002, FirstMerit, Fortran's senior secured creditor, holding a security interest ($1.8 million) in substantially all of Fortran's assets, filed a motion for the appointment of a receiver in state court. The state court entered a Stipulated Order granting the appointment of the Receiver. Meanwhile, Fortran had entered into an operational arrangement with Paper Money Management LLC ("PMM") for the purpose of allowing to PMM to complete a purchase of all of Fortran's assets. As of May 22, 2002, all of Fortran's assets, except some aged accounts receivable, were in the operational control of PMM. In the month of June, 2002 the Receiver determined that PMM was not running Fortran's business soundly. Upon discovering that PMM did not pay suppliers, Fortran's employees, the landlord, or the equipment lessors, the Receiver was authorized by the state court to terminate the PMM lease, and remove PMM's management.

Since May 22, 2002, Fortran has been operating under the control and direction of the Receiver. The state court order appointment directed the Receiver to, among other things, take control of, manage and operate Fortran's assets, and, if in the best interest of the receivership estate, sell the assets of Fortran. The pleadings in this case reveal that prior to the appointment of the Receiver, Fortran was financially distressed. Employees at Fortran had not been paid for the at least three weeks of employment, the rent for Fortran's business premises had not been paid for over four months; suppliers had refused to extend any credit due to Fortran's prior defaults and pending financial difficulties. (See Dottore, Direct). In FirstMerit's motion for appointment of a Receiver, FirstMerit alleged Fortran was mismanaged and was a defendant or subject to many lawsuits for failing to pay its debts.

Prior to the filing of this involuntary case, the Receiver purportedly entered into a letter of intent to sell the assets of Fortran. According to the Receiver, he believes that the funds generated from a sale of the assets, along with other profits earned during the receivership, will be sufficient to pay all of Fortran's secured debt and some of its unsecured debt. (Dottore, Direct). Moreover, the Receiver believes that a sale would keep Fortran's principal business location in Cleveland and save

more than the jobs of Fortran's 90 employees. (*Id.*).

## II.

The dispositive issues are whether the petitioning creditors have met their burden of proof under Section 303 of the Bankruptcy Code to support an entry of an order of relief and whether the Court should abstain or dismiss the proceedings under Section 305 of the Code.

## III.

██ Involuntary petitions are governed under Section 303 of the Code. Section 303 provides in part:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title-

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $10,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $10,000 of such claims.

11 U.S.C. § 303(b), (h)(1). Thusly, in order for an involuntary petition to withstand scrutiny, there must be either three qualified petition creditors or one petition creditor holding a claim in the amount of $10,000. It is undisputed that GECBAF is a petitioning creditor holding a claim in

the amount of $10,000. Spiral purportedly obtained a state court judgment in the amount of $26,336.03. Xpedx filed an action in state court alleging $463,920.01 due and owing on its loan. The Xpedx action is still pending. GECGAF's claim alone satisfies § 303(b), as Fortran has fewer than twelve holders of claims against it. Therefore, the Court must determine whether an order for relief shall be entered under § 303(h). Section 303 provides in pertinent part:

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if-

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute.

11 U.S.C. § 303(h). Herein, Fortran timely controverted the petition which precipitated the present evidentiary hearing. The testimony reveals that Fortran made payments, totaling $200,000.00 to one secured creditor, FirstMerit, prior to the involuntary filing. (Dottore, Cross). It is undisputed that the Receiver made no payments prereceivership to the petitioning creditors on Fortran's behalf. The Receiver testified that he was not permitted to pay prereceivership debts. (Dottore, Cross). However, this testimony is incredible in light of the fact that he moved the state court to pay a portion of FirstMerit's claim. No similar motion was filed to pay the petitioning creditors' claims. With this finding, Fortran is not paying its debts as they become due.

### Abstention or Dismissal

■■■ Having determined that the provisions of § 303 have been met, the Court must determine whether abstention or dismissal under § 305 is in the best interest of the estate. Section 305 provides in part:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or

\* \* \* \* \* \*

(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of title 28 or by the Supreme Court of the United States under section 1254 of title 28.

11 U.S.C. § 305. The decision to dismiss or suspend under 305(a) is discretionary and must be made on a case-by-case basis. *In re A & D Care, Inc.,* 90 B.R. 138, 141 (Bankr.W.D.Pa.1988). The application of § 305(a) is an extraordinary remedy, however, it is appropriate when the interests of the creditors and the debtor are best served by dismissal or suspension. *See, e.g.,* § 305(a)(1); *In re Mazzocone,* 200 B.R. 568, 575 (E.D.Pa.1996); *In re RCM Global Long Term Capital Appreciation Fund, Ltd.,* 200 B.R. 514, 525 (Bankr. S.D.N.Y.1996)(A motion under section 305(a) to dismiss a petition or suspend the bankruptcy case is a form of extraordinary relief). In applying § 305(a), courts have considered a wide range of factors, including, but not limited to, who filed the bankruptcy petition, the availability of another forum to resolve the pending disputes, the necessity of federal proceedings to achieve a just and equitable solution, the expense of the federal proceedings in comparison with the proceedings in another forum, the purpose of the party seeking to remain in bankruptcy court, the economy and efficiency of having the bankruptcy court handle the matter and the possible prejudice to various parties. Id. Another "key" consideration under § 305(a) is the economy and efficiency of administration in the bankruptcy court. *In re Business Information Co., Inc.,* 81 B.R. 382, 387 (Bankr. W.D.Pa.1988).

While no uniform test has been established in connection with determinations as to whether abstention is appropriate, early cases noted that three factors were relevant:

(1) Whether the petition was filed by a small number of creditors and most creditors oppose the bankruptcy;

(2) Whether there is a state insolvency proceeding or other out-of-court arrangement pending; and

(3) Whether dismissal is in the best interests of the debtors and all creditors.

*See In re Trina Associates,* 128 B.R. 858, 867 (Bankr.E.D.N.Y.1991). Later cases enlarged the list of factors that would be considered, such as:

(1) economy and efficiency of administration;

(2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

(3) whether federal proceedings are necessary to reach a just and equitable solution;

(4) whether there is an alternative means of achieving an equitable distribution of assets;

(5) whether the debtor and the creditors are able to work out a less expensive

out-of-court arrangement which better serves all interests in the case;

(6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7) the purpose for which bankruptcy jurisdiction has been sought.

*See id.* Another evaluative factor is the effect that a bankruptcy proceeding will have on the debtor's ongoing business. *In re Ceiling Fan Distrib., Inc.*, 37 B.R. 701, 703 (Bankr.M.D.La.1983).

The legislative history notes that a court may dismiss if an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of the creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. *See* House Report No. 95–595, 95th Cong., 1st Sess. 325 (1977); Senate House Report No. 95–989, 95th Cong., 2d Sess. 37 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 5787.

The Receiver testified that Fortran has formed a good working relationship with the creditors, suppliers, and the employees. (Dottore, Direct). The landlord has allowed Fortran to continue its leasehold interest at a reduced rate. (*Id.*). The Receiver has paid some prereceivership obligations, including a $200,000 payment to FirstMerit, and is current on all post-receivership obligations. Prior to this proceeding, the petitioning creditors entered into a settlement with Fortran and filed a joint motion to dismiss this above-styled case. The settlement (Exhibit P) was reached after negotiations between the parties. The settlement was placed on the record at a duly-noticed hearing, executed, and entered on the Court's docket. (Doc # 34). GECBAF subsequently filed a motion to withdraw its joinder in the joint motion to dismiss. Fortran, the Receiver, and FirstMerit oppose GECBAF's withdrawal and seek enforcement of the executed settlement which would effectively dismiss the case. GECBAF argues that the settlement was not approved as required by Rule 9019 of the Bankruptcy Rules, and that, therefore, it is able to repudiate the agreement.

Rule 9019 governs settlements and compromises in bankruptcy. It provides:

(a) Compromise

On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr.P. 9019. "After notice and a hearing" is a term of art used in bankruptcy. Section 102 defines that phrase providing: In this title—

(1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act. . .;

11 U.S.C. § 102. The legislative history of Section 102 notes that the phrase means after such notice as is appropriate in the

particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances. Thus, a hearing will not be necessary in every instance. If there is no objection to the proposed action, the action may go ahead without court action. This change is supposed to permit the bankruptcy judge to stay removed from the administration of the bankruptcy or reorganization case, and to become involved only when there is a dispute about a proposed action, that is, only when there is an objection. *See* House Report No. 95–595, 95th Cong., 1st Sess. 315 (1977); Senate House Report No. 95–989, 95th Cong., 2d Sess. 27 (1978).

There exists split authority regarding the efficacy of unapproved settlements. Some courts have concluded that under Bankruptcy Rule 9019, settlement agreements are not enforceable absent court approval. *In re Sparks*, 190 B.R. 842 (Bankr.N.D.Ill.1996); *In The Leslie Fay Cos., Inc.*, 168 B.R. 294 (Bankr. S.D.N.Y.1994); *In re Pugh*, 167 B.R. 251 (Bankr.M.D.Fla.1994); *In re Rothwell*, 159 B.R. 374 (Bankr.D.Mass.1993) (relying on *In re Lloyd, Carr and Co.*, 617 F.2d 882, 885 (1st Cir.1980) a case decided under the Bankruptcy Act and Bankruptcy Rule 9019(a)). On the other hand, courts have concluded that a settlement agreement is enforceable even prior to bankruptcy court approval. *In re United Shipping Co.*, 1989 WL 12723 (Bankr.D.Minn.1989); *In re Lyons Trans. Lines, Inc.*, 163 B.R. 474 (Bankr.W.D.Pa.1994); *In the Matter of Cotton*, 127 B.R. 287 (Bankr.M.D.Ga.1991), aff'd, 136 B.R. 888 (M.D.Ga.1992), *rev'd on other grounds*, 992 F.2d 311 (11th Cir. 1993). These latter courts reason that "[t]he absence of court approval does not mean that the parties did not agree to the settlement. It only means that the court has not yet approved it." *See In re Sparks*, 190 B.R. at 843. The focus of Rule 9019 is to protect other creditors

against bad deals made between one creditor and the debtor. *See Id., citing, United Shipping*, 1989 WL 12723 *5. The principal reason for requiring court approval is that creditors must be given notice of the agreement and an opportunity to object and the court must independently review the agreement to ensure that it is in the best interests of the estate. The focus of Rule 9019 is to protect other creditors against bad deals made between one creditor and the debtor. *United Shipping*, 1989 WL 12723 *5.

One court has opined that consistent with this legislative purpose, the Bankruptcy Code contains no requirement for judicial approval of settlements. Thus, unless the Bankruptcy Code requires court approval for the underlying action that the trustee seeks to accomplish, there should be no need for court approval of a settlement that effectuates that action. *In re Telesphere Communications, Inc.*, 179 B.R. 544, 551–52 (Bankr.N.D.Ill.1994). Herein, all the interested parties were represented at the negotiations, were present when the settlement was placed on the record, and were signatories on the duly-executed settlement. No provision of the negotiated settlement made the parties' assent subject to court approval. Nor was any reference made to Rule 9019 or any other authority. On the facts presented herein, court approval was unnecessary since the settlement was placed on the record in the presence of the judge and was duly-executed by all entitled parties.

After considering the testimony and the record of this case, it is in the best interest of the estate for this Court to dismiss the case under Section 305 of the Code. The petitioning creditors did not present sufficient evidence to warrant the entry of an order for relief. The evidence reveals that the Receiver has complied with each request that was made by the petitioning

creditors-including providing them with certain information. Indeed, Mr. McPherson, on behalf of XPedex, testified that XPedex's attorneys were aware that the Receiver received two offers for the sale of Fortran, despite the fact that he was not notified. (McPherson, Direct). The Receiver has provided the necessary reports required under the executed settlement. Although the petitioning creditors had a problem with the Receiver, as a fiduciary, not pursuing $1 million allegedly stolen by a PMM agent who formerly ran Fortran, they were unwilling to fund an investigation after the Receiver determined that an investigation would be costly to the estate and the insider was most likely uncollectable. (McPherson, Cross; Dottore, Direct).

In summary, the petitioning creditors seem to seek an order for relief on the grounds that the Receiver is not communicating with them, i.e. not complying with certain requests for reports and information. As noted above, the Receiver has unrefutedly done all that is required by him under the settlement and applicable state law. The petitioning creditors may obviously seek further relief from the state court as the Receiver was appointed by it. Further, to allow the creditors to repudiate a settlement, which was duly-executed by it and all entitled parties, prejudices Fortran and the other beneficiaries to the settlement. The evidence reflects that Fortran's business has made an economic upturn and is still conducting business with its primary creditors and suppliers. It has even conducted business with Spiral, one of the petitioning creditors, postreceivership. It has allayed the concerns of its employees, who were not paid for three weeks. In addition, the landlord has allowed Fortran to continue its lease at a reduced rent. The negative implications of this involuntary resulted in three suppliers ceasing their business relationship with Fortran. (Dottore, Direct). Moreover, it was unrefuted that Fortran's contracts prevent customers from dealing with it if a bankruptcy is filed. (Dottore, Re–Direct).

### Conclusion

Accordingly, the motions of the Receiver, Fortran, and FirstMerit to dismiss this involuntary case are hereby granted pursuant to § 305. Each party is to bear its respective costs.

**IT IS SO ORDERED.**