**IN RE: Randy K. DZIERZAWSKI,
Debtor.**

**Case No. 13–47986**

United States Bankruptcy Court,
E.D. Michigan, Southern Division.

Signed April 10, 2015

---

Stuart A. Gold, Jason Patrick Smalarz, Gold, Lange & Majoros P.C., Southfield, MI, for Debtor.

Todd J. Ohlms, Ryan W. Blackney, Freeborn & Peters LLP, Chicago, Illinois, for Vulpina, LLC.

Daniel M. Katlein, Allard & Fish, P.C., Detroit, Michigan, for Chapter 7 Trustee.

## OPINION REGARDING THE DEBT-OR'S MOTION TO VOLUNTARILY DISMISS THIS BANKRUPTCY CASE

Thomas J. Tucker, United States Bankruptcy Judge

### I. Introduction

This case is before the Court on the motion by the Debtor to voluntarily dismiss this Chapter 7 bankruptcy case, filed roughly 18 months after the Debtor voluntarily commenced the case. (Docket # 196, the "Motion"). The Motion is based on 11 U.S.C. §§ 707(a) (dismissal "for cause") and 305(a)(1) (dismissal of case

because "the interests of creditors and the debtor would be better served by such dismissal").

The Chapter 7 Trustee filed a "limited objection" to the Motion, which the Debtor and the Trustee have since settled, subject to certain terms, discussed below.[1] The Debtor's largest creditor, Vulpina, LLC ("Vulpina"), also filed an objection.[2] No other creditor objected. The Court held a hearing on the Motion, and ordered further briefing on a specific issue, which the Debtor and Vulpina have completed.[3]

For the reasons stated below, the Court will deny the Motion.

## II. Jurisdiction

This Court has subject matter jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and L.R. 83.50(a)(E.D.Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O ).

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core

proceedings. *See Allard v. Coenen (In re Trans–Industries, Inc.)*, 419 B.R. 21, 27 (Bankr.E.D.Mich.2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *id.* namely, Bankruptcy Code §§ 707(a) and 305(a), discussed below. And this matter is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *Id.*

## III. Background

The Debtor began this bankruptcy case by filing a voluntary Chapter 7 petition on April 19, 2013. Vulpina is a judgment creditor of the Debtor, holding an unsecured, non-priority claim as of the bankruptcy petition date of just over $1 million ($1,060,258.69).[4] Vulpina holds, by dollar amount, over 99% of the liquidated, allowed claims in this bankruptcy case, excluding administrative expenses. The deadline for creditors to file claims in this case was March 13, 2014.[5] In addition to Vulpina, the following creditors have filed timely claims in this case, in the following amounts:

---

1. Docket # 197.

2. Docket # 208.

3. Docket ## 221, 226.

4. *See* Vulpina's Proof of Claim filed March 12, 2014 (Claim No. 4–1), at 1.

5. *See* Notice of Need to File Proof of Claim Due to Recovery of Assets (Docket # 127).

| 1. Marlin Business Bank | $850.37 |
| 2. American Express Centurion Bank | $5,733.96 |
| 3. Continental Vineyards LLC | "unliquidated" with a pending lawsuit in the United States District Court for the Northern District of Illinois |
| 4. Indeck-Paso Robles LLC | "unliquidated" with a pending lawsuit in the United States District Court for the Northern District of Illinois |

In addition to these claims, a claim was filed by CRE Venture, LLC, in the amount of $435,785.53 on March 5, 2014, but that claim was withdrawn by the creditor on May 22, 2014. The claims of Continental Vineyard LLC and Indeck–Paso Robles LLC are the subject of an action pending in the United States District Court for the Northern District of Illinois, against Vinifera Wine Co., LLC, and the Debtor Dzierzawski. These two creditors have common ownership with Vulpina, and are represented by the same counsel that represents Vulpina in this bankruptcy case.

Proceedings to date in this case have been substantial. During the nearly two years that this bankruptcy case has now been pending, Vulpina has pursued its rights as a creditor very aggressively. And the Debtor, and sometimes other parties related to or affiliated with the Debtor, have resisted Vulpina's efforts at many turns. In a nutshell, Vulpina vigorously contends that the Debtor has been dishonest in this bankruptcy case and has failed to disclose all of his assets, income, and material pre-bankruptcy financial transactions.

The case has been consistently contentious. It has involved numerous contested motions, many of which the Court decided in favor of Vulpina and against the Debtor or other related parties. These litigated matters have included (1) two motions by Vulpina seeking discovery under Fed. R.Bankr.P.2004, including extensive document requests to the Debtor and numerous third parties, which the Debtor and others opposed, but which the Court granted on September 19, 2013;[6] (2) the Debtor's motion seeking, under 11 U.S.C. § 305(a), a suspension of the Chapter 7 bankruptcy case due to the Debtor's federal criminal indictment, which Vulpina opposed and the Court denied on September 19, 2013;[7] (3) Vulpina's objections to the Debtor's claimed exemptions, which required two hearings, and which the Court sustained in part and which were withdrawn in part, on October 2, 2013 and December 11, 2013;[8] (4) the Debtor's motion to quash numerous subpoenas issued by Vulpina under Fed.R.Bankr.P.2004, joined by numerous third parties, which the Court denied on October 23, 2013;[9] (5) at least four motions filed by Vulpina to extend the deadline for filing objections to discharge and/or an action to determine dischargeability under § 523, the first two of which the Debtor agreed to, but the last

6. Docket ## 34, 35, 56, 57.

7. Docket ## 36, 55.

8. Docket ## 28, 62, 122.

9. Docket ## 63, 67, 90.

two of which the Debtor objected to;[10] (6) a November 20, 2013 motion for Rule 2004 examination, objected to by the Debtor, but granted by the Court on December 18, 2013;[11] (7) a motion by Vulpina to compel the Debtor to comply with a subpoena, filed November 29, 2013, which the Debtor opposed and the Court denied;[12] (8) the April 22, 2014 motion by Vulpina to compel the Debtor to answer certain deposition questions, which the Debtor opposed, and the Court granted in part.[13]

In addition to the many contested matters, Vulpina has filed two adversary proceedings against the Debtor. First, Vulpina filed an adversary proceeding objecting to the Debtor's discharge under numerous provisions of 11 U.S.C. § 727(a), and which remains pending.[14]

Second, Vulpina filed a motion asking the Court to grant it derivative standing to file, on behalf of the bankruptcy estate, a fraudulent transfer action against the Debtor's wife, Kimberly Dzierzawski. Vulpina filed that motion on August 14, 2014. The Debtor and his wife each opposed the motion, and after holding a hearing, the Court granted the motion on September 26, 2014.[15] The Court's derivative standing order authorized Vulpina to file and prosecute, on behalf of the bankruptcy estate, an action very much like the one Vulpina filed in the United States District Court before the Debtor filed this bankruptcy case. The action alleges that the Debtor fraudulently transferred to his wife, Kimberly Dzierzawski, 99% of his then-existing 100% interest in Vinifera Wine Co., LLC. In that district court action, Vulpina sought avoidance of the transfer based on Michigan's version of the Uniform Fraudulent Transfer Act, Mich. Comp. Laws §§ 566.34 and 566.35.[16] Vulpina filed the adversary proceeding on November 14, 2014, and it remains pending.[17] The Debtor and his wife each filed a motion to withdraw the reference in that adversary proceeding to the United States District Court, on December 5, 2014, and December 15, 2014.[18] Those motions remain pending in the district court.

In addition to the numerous discovery disputes in the main bankruptcy case, including those referred to above, Vulpina's § 727 adversary proceeding against the Debtor has involved substantial discovery disputes. On September 17, October 1, and October 15, 2014, the Court held lengthy hearings on a total of five discovery-related motions,[19] and made oral rulings on all of them. Orders formalizing the Court's rulings were filed regarding three of these motions, on September 17, October 1, and November 7, 2014.[20] A dispute arose between the parties about the form and content of the orders to be entered for the Court's rulings on the oth-

10. Docket ## 32, 58, 141, 146.

11. Docket ## 109, 119, 135.

12. Docket ## 113, 131, 140.

13. Docket ## 146, 152, 163.

14. Adv. No. 13–5147.

15. Docket ## 175, 178, 179, 193, 194. The Court's September 26, 2014 opinion regarding this motion is reported at *In re Dzierzawski,* 518 B.R. 415 (Bankr.E.D.Mich.2014).

16. *See* Ex. 4 to Docket # 175 (Vulpina's First Amended Complaint filed in the district court action).

17. Adv. No. 14–5199.

18. Docket ## 5, 11 in Adv. No. 14–5199.

19. Docket ## 52, 57, 68, 70, and 71 in Adv. No. 13–5147.

20. Docket ## 90, 101, and 107 in Adv. No. 13–5147.

er two motions,[21] and the hearing on that dispute has been adjourned to await the Court's ruling on the Debtor's motion to dismiss his bankruptcy case.[22]

Under the Court's oral rulings on the two discovery motions that have not yet been formalized in a written order, the Debtor will be required to produce additional documents, including electronically stored information, and then may be required to undergo further deposition by Vulpina. The burden of this further discovery may be substantial for both parties.

## IV. The terms on which the Debtor seeks to dismiss the bankruptcy case

The Debtor characterizes his motion to dismiss this bankruptcy case, in substance, as the Debtor giving up any effort to obtain a bankruptcy discharge of any of his debts, so that his creditors, including Vulpina, can pursue collection of his debts outside of bankruptcy. The Debtor portrays the dismissal as one that would not prejudice any creditors, and that would pay all outstanding administrative expenses of his bankruptcy case. Specifically, the Motion proposed a dismissal of this case on the following terms.

1. The bankruptcy case would be dismissed "with prejudice."

2. "All pre-bankruptcy Debts of the Debtor" would be "barred from discharge in any other bankruptcy case filed by the Debtor."

3. Vulpina's § 727 adversary proceeding would be dismissed "without costs or fees to either party."

4. The Debtor will "pay all outstanding administrative claims of the Chapter 7 Trustee and his professionals." [23]

To resolve the Chapter 7 Trustee's limited objections to the Motion, the Debtor modified the relief sought by adding the following terms:

Before the case is dismissed, the following events must occur:

1. Debtor must tender to the Trustee the sum of $56,623.00.

2. The Trustee then will be authorized, without further order, to pay a Trustee fee to the Trustee of $2,075.00, the "actual fees and expenses of" Trustee's counsel (amount not yet specified); and pay in full the amount of the filed claims of Marlin Business Bank ($850.37) and American Express Centurion Bank ($5,733.96).

3. Any funds remaining in the estate after these payments shall be paid back to the Debtor.[24]

4. After making disbursements specified above, the Trustee is to file a certification of the payments, and submit to the Court for entry an order dismissing the case, in the form originally proposed by the Debtor's Motion (described above).[25] (With the addition that Vulpina's fraudulent transfer adversary pro-

---

**21.** *See* Docket ## 110–113 in Adv. No. 13–5147.

**22.** *See* Docket ## 114, 125 in Adv. No. 13–5147

**23.** Ex. 1 to Mot. (Docket # 196 (proposed order)).

**24.** In addition to this $56,623.000 sum that the Debtor is to pay to the Trustee before dismissal, the Court notes that at the Novem-

ber 19, 2014 hearing, the Trustee's counsel reported that the estate has funds on hand of $12,000.00 ("approximately"). (Tr. of November 19, 2014 hearing (Docket # 225) at 27.)

**25.** *See* "Corrected Stipulation" between the Debtor and the Trustee and Ex. 1 to the "Corrected Stipulation" (Docket # 227).

ceeding (Adv. No. 145199) will be dismissed also, without costs or fees to any party.)

## V. Discussion

### A. Standard for dismissal under 11 U.S.C. § 707(a)

Section 707(a) of the Bankruptcy Code provides:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for causè, including–

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a) (emphasis added). "Although the Code does not expressly address whether § 707(a) applies to a debtor seeking voluntary dismissal of his own petition, 'courts have found that chapter 7 debtors may move for voluntary dismissal under this section.'" *In re Jabarin*, 395 B.R. 330, 337 (Bankr.E.D.Pa.2008) (citations omitted); *accord In re Hopper*, 404 B.R. 302, 306 (Bankr.N.D.Ill.2009) (citations omitted)("Although § 707(a) does not expressly refer to a voluntary dismissal by the debtor, courts routinely apply it to such a motion.").

■ "The Debtor does not have an absolute right to dismiss a chapter 7 petition." *Sicherman v. Cohara (In re Cohara)*, 324 B.R. 24, 27 (6th Cir. BAP 2005) (citation omitted); *see also In re Barnette*, 309 B.R. 516, 518 (Bankr.N.D.Ohio 2004)("[t]here is a presumption that once commenced, a Chapter 7 bankruptcy will proceed until the case is fully administered"; "[r]eflected in this policy is the rule that, unlike a Chapter 13 bankruptcy, an individual debtor has no right to dismiss a case commenced under Chapter 7 of the Bankruptcy Code"; and "[i]mplementing this policy decision is § 707(a) of the Bankruptcy Code which conditions a dismissal of a Chapter 7 bankruptcy on the existence of 'cause.' ").

■ "To dismiss a chapter 7 case voluntarily, 'the debtor has the burden of demonstrating sufficient cause.'" *Jabarin*, 395 B.R. at 337 (citations omitted); *accord Cohara*, 324 B.R. at 27 (citations omitted).

■ The Bankruptcy Code provides no definition of "cause" as used in § 707(a). Rather, § 707(a) provides, by way of example in §§ 707(a)(1)-(a)(3), a non-exclusive list of three circumstances that may constitute sufficient "cause" to voluntarily dismiss a case. However, the grounds for voluntary dismissal under §§ 707(a)(1)-(a)(3), "only apply when a nondebtor is the moving party." *Barnette*, 309 B.R. at 518.

■ "Determining whether sufficient cause exists is committed to the sound discretion of the bankruptcy court." *Jabarin*, 395 B.R. at 337 (citations omitted). Courts have basically taken three different approaches in determining whether "cause" exists under § 707(a) to voluntarily dismiss a case. *Id.* (relying on a survey of the law on § 707(a) conducted by the court in *Barry v. Sommers (In re Cochener)*, 382 B.R. 311, 334 (S.D.Tex.2007), *rev'd on other grounds*, 297 Fed.Appx. 382 (5th Cir.2008)).

The first line of cases holds that there can be no dismissal under § 707(a) "if there is any showing of prejudice to creditors." This expression of the test implies that any prejudice to creditors is

an absolute bar to voluntary dismissal, no matter how compelling the reasons for the debtor's request for voluntary dismissal.

Another line of cases holds that "the test [for cause] turns on whether or not the dismissal is in the best interests of the debtor and the creditors of the estate ... with particular emphasis on whether the dismissal would be prejudicial to creditors." Courts adhering to this line of cases apply what may be characterized as a balancing of interests test. A "[d]ebtor's interest lies in securing a fresh start while [a] creditor's interest concerns the prejudice and delay encountered in pursuing its claim."

Finally, in a third line of cases, dismissal is granted freely unless it will cause "plain legal prejudice" to creditors. Plain legal prejudice has been described as "prejudice that is significant and real, not potential, when viewed in terms of the rights that debtors and creditors have after dismissal." From the debtor's perspective, the "plain legal prejudice" test is the most hospitable standard. It appears to set the bar for opposing dismissal at the highest level among the three tests because it requires demonstrable prejudice and rules out potential prejudice as a basis for denying the motion.

In practice, the three (3) lines of cases described above may not be as distinct as their stated tests may make them appear. For example, courts that purport to employ the "absolutist" approach of the "any prejudice" test in the first line of cases as well as courts that "balance" the interests of the debtor and the creditors may consider the same "factors" in ruling on a voluntary motion to dismiss under § 707(a), such as:

1. whether all of the creditors have consented;

2. whether the debtor is acting in good faith;

3. whether dismissal would result in a prejudicial delay in payment;

4. whether dismissal would result in a reordering of priorities;

5. whether there is another proceeding through which the payment of claims can be handled;

6. whether an objection to discharge, an objection to exemptions, or a preference claim is pending.

Thus, while in the abstract, these three (3) lines of cases articulate a different legal standard for voluntary dismissal under § 707(a), all of the courts may be employing, at bottom, the same analysis—a factually intensive assessment of the debtor's reasons for requesting dismissal and of the impact dismissal can be expected to have on the creditors. Such an approach is susceptible to being labeled a balancing test.

*Id.* at 337–39 (footnotes omitted) (citations omitted).

Other factors that courts have considered in determining whether there is sufficient cause to dismiss a case under § 707(a) include: "(1) whether dismissal is in the best interest of the debtor; (2) whether dismissal is in the best interest of the creditors; (3) whether dismissal would result in an abuse or manipulation of the system; and (4) whether dismissal is justified by compelling equitable principles." *Hopper*, 404 B.R. at 308 (citations omitted). Some courts have also considered "the debtor's ability to repay creditors outside of bankruptcy" and the length of time that a debtor has enjoyed the protections of the automatic stay before filing a motion to voluntarily dismiss the case. *See, e.g., In re Livecchi*, No. 09–20897, 2014 WL 6655702, at *2 (Bankr.W.D.N.Y. Nov. 20, 2014).

## B. Standard for dismissal under 11 U.S.C. § 305(a)(1)

Section 305(a)(1) provides: "(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—(1) the interests of creditors and the debtor would be better served by such dismissal or suspension[.]" 11 U.S.C. § 305(a)(1).

■ Dismissal under § 305(a) is an extraordinary remedy, which should not be used as a substitute for a motion for voluntary dismissal under 11 U.S.C. § 707(a)(1). *See In re L & M Video Prods., Inc.*, No. 07–31798, 2007 WL 1847387, at *6 (Bankr. N.D.Ohio June 25, 2007) (citation omitted); *see also In re Cincinnati Gear Co.*, 304 B.R. 784, 785 (Bank.S.D.Ohio 2003)(citing *Barnett v. Edwards (In re Edwards )*, 214 B.R. 613, 620 (9th Cir. BAP 1997)("Section 305(a)(1) is an extraordinary remedy that should be applied with extreme caution.")(involuntary Chapter 7 case)); *2 Collier on Bankruptcy* ¶ 305.02, at 305–6 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2014); *Cochener*, 382 B.R. at 333 (footnote omitted) (citations omitted)("11 U.S.C. § 305[is] an abstention statute that permits a bankruptcy court to dismiss or suspend proceedings in extraordinary circumstances.").

■■ " 'The decision to dismiss or suspend under § 305(a) is discretionary and must be made on a case-by-case basis.' " *L & M Video Prods., Inc.*, 2007 WL 1847387, at *6 (quoting *In re Fortran Printing, Inc.*, 297 B.R. 89, 94 (Bankr. N.D.Ohio 2003)). "The moving party bears the burden to demonstrate that the interests of the debtor and its creditors would benefit from dismissal or suspension of proceedings under § 305(a)(1)." *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462–63 (Bankr.S.D.N.Y.2008)(citing *Gurley*

*v. Mills (In re Gurley )*, 222 B.R. 124, 130 (Bankr.W.D.Tenn.1998)).

■ As the statutory wording makes clear, "[t]he test under Section 305(a)(1) requires that both creditors and the debtor benefit from a dismissal, not merely the application of a balancing test to determine whether dismissal is appropriate." *RHTC Liquidating Co. v. Union Pacific R.R. Co. (In re RHTC Liquidating Co.)*, 424 B.R. 714, 720–21 (Bankr.W.D.Pa.2010) (citation omitted); *see also Eastman v. Eastman (In re Eastman )*, 188 B.R. 621, 625 (9th Cir. BAP 1995); *In re Spade*, 258 B.R. 221, 225 (Bankr.D.Colo.2001).

> Some courts, like that in *In re RAI Marketing Serv., Inc.*, 20 B.R. 943 (Bankr.D.Kan.1982), construe the § 305 abstention very narrowly as affording courts the ability to abstain only when the specific factors mentioned in the statutes's legislative history are present in a case. Other courts, like that in *In re Tarletz*, 27 B.R. 787 (Bankr.D.Colo. 1983), view § 305 as allowing bankruptcy courts to use their discretion in evaluating a wide range of factors beyond those in the legislative history in deciding whether it is appropriate to abstain under § 305.

*Spade*, 258 B.R. at 225.

> In applying § 305(a), courts have considered a wide range of factors, including, but not limited to, who filed the bankruptcy petition, the availability of another forum to resolve the pending disputes, the necessity of federal proceedings to achieve a just and equitable solution, the expense of the federal proceedings in comparison with the proceedings in another forum, the purpose of the party seeking to remain in bankruptcy court, the economy and efficiency of having the bankruptcy court handle the matter and the possible prejudice to various parties. *Id.* Another "key" con-

sideration under § 305(a) is the economy and efficiency of administration in the bankruptcy court.

*In re Fortran Printing, Inc.*, 297 B.R. 89, 94 (Bankr.N.D.Ohio 2003) (citation omitted); *see also Lackawaxen Telecom, Inc. v. South Canaan Cellular Invs., LLC (In re South Canaan Cellular Invs., LLC )*, 420 B.R. 625, 631 (E.D.Pa.2009)(same). Similarly, other courts have listed factors to be considered in applying § 305(a) as including the following:

(1) economy and efficiency of administration;

(2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

(3) whether federal proceedings are necessary to reach a just and equitable solution;

(4) whether there is an alternative means of achieving an equitable distribution of assets;

(5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; ...

(7) the purpose for which bankruptcy jurisdiction has been sought[; and

(8) "the effect that a bankruptcy proceeding will have on the debtor's ongoing business"].

*Fortran Printing*, 297 B.R. at 94–95.

"Dismissal or suspension of a case may be appropriate when the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor." 2 *Collier on Bankruptcy* ¶ 305.02[d], at 305–9. However, at least one court has denied a Chapter 7 debtors's motion to voluntarily dismiss his Chapter 7 case for cause under § 707(a) even though the court determined that there was no doubt that the case was clearly a two-party dispute. *See Kirby v. Spatz (In re Kirby )*, 221 B.R. 992, 994 (Bankr.M.D.Fla.1998).

## C. Application of §§ 707(a) and 305(a) to this case, and the likelihood of prejudice to the creditor Vulpina

 As the case law makes clear, a very important consideration in whether the Court should allow the debtor to voluntarily dismiss a Chapter 7 bankruptcy case, under either § 707(a) or § 305(a), is whether creditors would be prejudiced by the dismissal. In this case, the Court concludes that Vulpina is likely to be materially prejudiced by Debtor's proposed dismissal. Because of this, and because the other relevant factors, on balance, do not support dismissal, the Court concludes in its discretion that dismissal should be denied, under both § 707(a) and § 305(a).

### 1. The Debtor's proposed permanent bar to discharge

On the Debtor's proposed terms, the Debtor's debt to Vulpina will not be discharged, and can never be discharged in any future bankruptcy case filed by or against the Debtor. As noted above, the proposed order filed with the Motion states that "All pre-bankruptcy Debts of the Debtor" would be "barred from discharge in any other bankruptcy case filed by the Debtor." The revised order that the Debtor later stipulated to with the Chapter 7 Trustee adds to this sentence the phrase "pursuant to 11 U.S.C.

§ 349(a[) ]." [26]

Such a bar to a future discharge in a dismissal order would be effective, under § 349(a),[27] to prevent the Debtor from ever obtaining a discharge of any part of his judgment debt to Vulpina, in any future bankruptcy case under any chapter. And Vulpina does not contend otherwise. *See, e.g., In re Mickler,* 324 B.R. 613, 618, 619 (Bankr.W.D.Ky.2005), *aff'd,* 344 B.R. 817 (W.D.Ky.2006), *aff'd,* 256 Fed.Appx. 773 (6th Cir.2007)(barring discharge, under § 349(a), of certain debts by the debtor in "any future bankruptcy cases," and noting that the language of § 349(a) "expressly recognizes that the Court may, for cause, order that the dismissal of a bankruptcy case will bar the discharge in a later bankruptcy case of debts that were dischargeable in the case dismissed"); *In re McCoy,* 237 B.R. 419, 422 (Bankr. S.D.Ohio 1999) (citations omitted)("In order to prevent abuse of the bankruptcy process by bad-faith filings, courts have the authority to dismiss bankruptcy cases . . . and permanently bar discharge of specific debts or a class of debts under § 349(a)."); *Cooper v. Kramer (In re Cooper)*, 153 B.R. 898, 900 (D.Colo.1993)(holding that "for cause" under 11 U.S.C. § 349(a), a bankruptcy court may "perma-nently disqualify a class of debts from discharge").

At least in theory, this type of complete bar to a future discharge of Vulpina's claim is better for Vulpina than what Vulpina can obtain if the present bankruptcy case is not dismissed, and Vulpina prevails in its pending § 727 objection-to-discharge action. In that scenario, under 11 U.S.C. § 523(a)(10), the Debtor's debt to Vulpina would be non-dischargeable in any future bankruptcy case under Chapter 7 or Chapter 11. It would also be non-dischargeable in any future Chapter 13 case, in which the Debtor obtained only a hardship discharge under 11 U.S.C. § 1328(b).[28] But if the debt ever was reduced by collections it could be potentially dischargeable in a future Chapter 13 case under 11 U.S.C. § 1328(a). Under 11 U.S.C. § 109(e), the Debtor would never be eligible to be a Chapter 13 debtor, unless and until the total of his "noncontingent, liquidated, unsecured debts" were less than $383,175.00.[29] And the Debtor's judgment debt to Vulpina alone exceeds $1 million, with post-judgment interest continuing to accrue. But it is theoretically possible that if the Debtor's debt to Vulpina were ever paid down to a low enough level, the Debtor would be eligible to file a Chapter 13 case, and the Debtor might be able to

---

**26.** Ex. A–I to the "Corrected Stipulation" between the Debtor and the Trustee (Docket # 227) at ¶ 5.

**27.** Section 349(a) states:

**Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed;** nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a)(emphasis added).

**28.** Section 523(a)(10) states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(10) that was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title or under the Bankruptcy Act in which the debtor waived discharge, or was denied a discharge under section 727(a)(2), (3), (4), (5), (6), or (7) of this title, or under section 14c(1), (2), (3), (4), (6), or (7) of such Act;

11 U.S.C. § 523(a)(10)(emphasis added).

**29.** This unsecured debt cap in § 109(e) is periodically adjusted for inflation, so it may be somewhat higher in the future.

discharge that remaining debt under § 1328(a), after confirming and fully performing a Chapter 13 plan.

This limited possible future route to dischargeability, which may be unlikely in any event, is definitely not available to the Debtor if the present bankruptcy case is dismissed on the Debtor's proposed terms. So at least as to the issue of the dischargeability of the Debtor's debt owing to Vulpina, there would be no prejudice to Vulpina from the Debtor's proposed dismissal, and in fact, Vulpina would have a more complete bar to discharge in the future. In addition, there may be an added benefit to Vulpina under the Debtor's proposed dismissal terms, because Vulpina would be able to avoid attorney fees and expenses that Vulpina may have to spend going forward in prosecuting its § 727 adversary proceeding to conclusion, if the present bankruptcy case is *not* dismissed.

### 2. Prejudice to Vulpina's ability to collect its judgment if the bankruptcy is dismissed

But non-dischargeability and Vulpina's cost to achieve it, of course, are not the only considerations. There is also the question whether Vulpina will suffer prejudice to its ability to collect its judgment if the bankruptcy case is dismissed. There is some initial appeal to the Debtor's argument that Vulpina would not be prejudiced in this respect. As the Debtor points out, upon dismissal of the bankruptcy case, Vulpina would be free to pursue collection of its judgment against the Debtor in any appropriate non-bankruptcy court, using all the normal non-bankruptcy law tools for collection of judgments, including the same types of discovery tools Vulpina has been using in this Court. The Debtor's argument here is correct in many respects, but not in all respects, and this is where the Motion falters.

This has to do with Vulpina's effort to avoid the Debtor's pre-petition transfer to his wife, Kimberly Dzierzawski, of 99% of the Debtor's 100% interest in Vinifera Wine Co., LLC ("Vinifera"). As described in Part III of this opinion, Vulpina is currently seeking to avoid that allegedly fraudulent transfer in Adversary Proceeding No. 14–5199. Vulpina is pursuing that adversary proceeding on behalf of the entire bankruptcy estate, having been granted derivative standing by this Court to do so, on specified terms. Before the Debtor filed this bankruptcy case, Vulpina had filed an action in the United States District Court of this district that was very similar to the pending adversary proceeding. That action also sought to avoid the Debtor's allegedly fraudulent transfer of his interest in Vinifera to his wife. But that action was stayed by the automatic stay that arose when the Debtor filed this bankruptcy case, and has remained inactive since that time.

If Vulpina is successful, either in its pending adversary proceeding or, outside of bankruptcy, in the action pending in the United States District Court, the relief will include the avoidance of the pre-petition transfer, such that the Debtor will be deemed once again to own a 100% membership interest in Vinifera. Vulpina believes that Vinifera may have substantial value, and so it seeks to re-establish the Debtor as the sole member of that LLC, and thereafter to pursue collection of its judgment from that asset.

If this bankruptcy case is dismissed on the terms Debtor proposes, Vulpina immediately will be able to resume its effort to avoid the alleged fraudulent transfer of Vinifera in the pending United States District Court case.

But Vulpina argues that it may be greatly prejudiced in its ability to realize any collection of its judgment from the Vinifera

asset, if Vulpina must pursue its fraudulent transfer action outside of bankruptcy. Outside of bankruptcy, Vulpina's ability to realize any value from the Debtor's membership interest in Vinifera may be greatly limited by Michigan's charging-order statute that applies to limited liability companies. Under that statute, Mich. Comp. Laws § 450.4507, a judgment creditor of a member of an LLC is limited to obtaining a charging order and lien against the membership interest of the judgment debtor. The judgment creditor cannot foreclose on that lien, and the only thing the charging order gives the creditor is the right to receive any distributions that the member is entitled to or becomes entitled to in the future. The statute states:

**450.4507. Satisfaction of judgment out of member's membership interest by judgment creditor**

(1) If a court of competent jurisdiction receives an application from any judgment creditor of a member of a limited liability company, the court may charge the membership interest of the member with payment of the unsatisfied amount of judgment with interest.

(2) **If a limited liability company is served with a charging order** and notified of the terms of that order, then to the extent described in the order, **the member's judgment creditor described in the order is entitled to receive only any distribution or distributions to which the judgment creditor is entitled with respect to the member's membership interest.**

(3) This act does not deprive any member of the benefit of any exemption laws applicable to the member's membership interest.

(4) Unless otherwise provided in an operating agreement or admitted as a member under section 501, a judgment creditor of a member that obtains a charging order does not become a member of the limited liability company, and the member that is the subject of the charging order remains a member of the limited liability company and retains all rights and powers of membership except the right to receive distributions to the extent charged.

(5) **A charging order is a lien on the membership interest of the member that is the subject of the charging order. However, a person may not foreclose on that lien or on the membership interest under this act or any other law,** and the charging order is not an assignment of the member's membership interest for purposes of section [450.]505(4).

(6) **This section provides the exclusive remedy by which a judgment creditor of a member may satisfy a judgment out of the member's membership interest in a limited liability company.** A court order to which a member may have been entitled that requires a limited liability company to take an action, provide an accounting, or answer an inquiry is not available to a judgment creditor of that member attempting to satisfy a judgment out of the member's membership interest, and a court may not issue an order to a judgment creditor.

Mich. Comp. Laws § 450.4507 (emphasis added).

Vulpina argues that outside of bankruptcy, if it were limited to this statutory charging order for collecting from the Debtor's membership interest in Vinifera, the Debtor, as the sole member of Vinifera, could manipulate the affairs of Vinifera in such a way that Vinifera would owe little or no distributions to its member, and thereby have to pay Vulpina little or nothing under the charging order.

By contrast, the Debtor and Vulpina appear to agree that if Vulpina is able to pursue its avoidance action within the bankruptcy case, and prevail, the resulting status of the Debtor as the 100% member of Vinifera would give the Chapter 7 Trustee the ability to cause a liquidation of the assets of that LLC, for the benefit of the creditors, including Vulpina, the largest creditor.

In their arguments, the Debtor and Vulpina both assume that if the Chapter 7 Debtor in this case is established as the sole member of this LLC, the Chapter 7 Trustee could step into the Debtor's shoes as the sole member of the LLC, and exercise the Debtor's rights to control the management of the LLC. Exercising such management power, the Trustee could cause the LLC to make distributions to the bankruptcy estate, or cause the LLC to sell its assets. Or, the parties seem to assume, the Chapter 7 Trustee could exercise the Debtor's 100% membership rights under Mich. Comp. Laws Ann. § 450.4801 [30] to cause the LLC to dissolve, wind down, and thereby liquidate under Michigan law. If such a liquidation of the LLC occurred, the bankruptcy estate, as owner of the Debtor's 100% membership in the LLC, would receive the net proceeds of the LLC's liquidation—*i.e.,* the proceeds that were left after the creditors of the LLC were satisfied.[31]

The Court will accept these implicit assumptions of the parties, at least for purposes of ruling on the Debtor's motion to dismiss the bankruptcy case. There has been no expression of any dispute between the Debtor and Vulpina about these assumptions, and in any event, these assumptions appear to reflect a correct view of the law. *See, e.g., Fowler v. Shadel,* 400 F.3d 1016, 1018 (7th Cir.2005)(where the Chapter 7 debtor was the sole shareholder of a corporation, upon the debtor's filing his Chapter 7 petition, the debtor's shares of stock in the corporation became property of the bankruptcy estate and the Chapter 7 trustee, "[a]s the owner of the shares in bankruptcy, ... could liquidate the corporation and obtain legal ownership of the corporate [property]"); *In re B & M Land & Livestock, LLC,* 498 B.R. 262, 267 (Bankr.D.Nev.2013)(holding that "where a debtor has a membership interest in a single-member LLC and files a petition for bankruptcy under Chapter 7, the Chapter 7 trustee's rights automatically include the right to manage that entity"); *Fursman v. Ulrich (In re First Protection, Inc.),* 440 B.R. 821, 830 (9th Cir. BAP 2010)(holding that "the [Chapter 7] trustee was not a mere assignee, but stepped into [the d]ebtors' shoes, succeeding to all of their rights, including the right [as sole owners and members of Redux, a limited liability company,] to control Redux"); *In re A–Z Electronics, LLC,* 350 B.R. 886, 891 (Bankr.D.Idaho 2006)(holding that, where one of the joint Chapter 7 debtors owned 100% of the membership interests in a limited liability company, the Chapter 7 trustee "was the only one entitled to manage [such limited liability company] and decide, *inter alia,* whether the LLC would or would not file bankruptcy"); *In re Albright,* 291 B.R. 538, 541 (Bankr.D.Colo.2003)(explaining that "[b]ecause the Trustee became the sole member of Western Blue Sky LLC upon the [d]ebtor's bankruptcy filing, the Trustee now

---

30. The members of an LLC can trigger a dissolution and winding-down of the LLC by a unanimous vote of the members. *See* Mich. Comp. Laws Ann. § 450.4801(c).

31. *See* Mich. Comp. Laws Ann. § 450.4808(1)(b) and (c). The process of dissolution and winding-down is governed by Mich. Comp. Laws Ann. §§ 450.4801 through 450.4808.

controls, directly or indirectly, all governance of that entity, including decisions regarding liquidation of the entity's assets"); *In re Modanlo*, 412 B.R. 715, 731 (Bankr.D.Md.2006), *aff'd*, 266 Fed.Appx. 272 (4th Cir.2008)(holding that the appointed Chapter 11 trustee of a limited liability company's sole member "had the power to place [the limited liability company] into bankruptcy ... and, standing in the shoes of the [d]ebtor ... possess[ed] both the economic and governance rights to participate in the management of [the limited liability company] that the [d]ebtor himself enjoyed prior to his bankruptcy filing"); *Movitz v. Fiesta Invs., LLC* (*In re Ehmann*), 319 B.R. 200, 206 (Bankr.D.Ariz.2005)(footnotes omitted)(holding that upon the debtor's filing of his Chapter 7 petition, the Chapter 7 trustee had "all of the rights and powers with respect to the multi-member LLC of which he was a member including "redemption of the [d]ebtor's interest, appointment of a receiver to operate the partnership in accordance with its purposes and the members' rights, or dissolution, wind up and liquidation"); *Samson v. Prokopf* (*In re Smith*), 185 B.R. 285, 290–92 (Bankr.S.D.Ill.1995)(Chapter 7 trustee of estate of debtor, who was a limited partner in a partnership, succeeded to all of the debtor's interests in the partnership including her contractual rights under the partnership agreement—including the right to seek judicial dissolution of the partnership").

In sum, Vulpina fears that if it is forced to pursue collection against the Debtor's Vinifera membership interest outside of bankruptcy, it likely will get little or nothing from that asset, because of Michigan's charging-order statute. But, Vulpina argues, inside bankruptcy it has the possibility of a significant recovery if the transfer of this asset is avoided.

At the hearing and in his post-hearing brief, the Debtor has tried to raise some doubt about whether the remedy limitations of Michigan's charging-order statute would be applied by a non-bankruptcy court in the case of a single-member LLC, which is what Vinifera would be if Vulpina succeeded in avoiding the Debtor's prepetition transfer of his interest in this LLC to his wife. Debtor's counsel appears to have chosen their words on this subject carefully, presumably to avoid being judicially estopped from later contending that the charging-order statute applies equally to single-member LLCs. The Debtor's post-hearing brief states:

At the conclusion of the hearing on [the Debtor's] motion to dismiss his Chapter 7 bankruptcy case ..., the Court ordered additional briefing regarding the limited issue of "whether the creditor-remedy provisions of Mich. Comp. Laws § 450.4507, including the limitations on creditor remedies therein, apply when the LLC is a single-member LLC (the 'single-member LLC issue')." ... Michigan law is silent as to whether the creditor-remedy provisions in MCL § 450.4507 apply in the context of a single-member limited liability company ("LLC").

Nevertheless, the Debtor believes that the Michigan Supreme Court, if called upon to determine the single-member LLC issue, could potentially rule that the limitations on creditor remedies found in Mich. Comp. Laws § 450.4507 do not apply to single-member limited liability companies. Even though Debtor disagrees, Vulpina could rely on case law and the statutory language from other jurisdictions across the United States in an attempt to persuade the Michigan Supreme Court to adopt this conclusion.

. . .

Michigan, like all states, permits the creditors of an owner of a Michigan LLC to obtain a charging order against the debtor-owner's membership interest. MCL § 450.4507 The charging order exists to protect the *other members* of the LLC from having to involuntarily share governance responsibilities with someone they did not choose, or from having to accept a creditor of another member as a co-manager. See *In re Albright,* 291 B.R. 538, 541 (Bankr.D.Colo.2003) (applying Colorado law). The policy rationale, however, disappears when the LLC has only one member. *Albright,* 291 B.R. at 541. ("The charging order limitation serves no purpose in a single member limited liability company, because there are no other parties' interests affected.")

Even though Michigan has not made a distinction in how it handles cases involving single versus multi-member LLCs, Vulpina maintains that creditors of single-member LLCs in Michigan are limited to the charging order remedy. Its definitive conclusion is arguably premature. First, Vulpina's argument overstates the language in the Act. While MCL § 450.4507(6) provides that a charging order is the "exclusive remedy", the statutory language is silent as to whether it applies to single-member LLCs, multi-member LLCs, or both. Second, although the Act states that charging orders are the exclusive remedy, courts in other jurisdictions have neglected to support the exclusivity of the charging order provisions in favor of allowing a judgment creditor to reach the assets of a single-member LLC. See, e.g., *In re Albright, supra*; *In re Modanlo,* 412 B.R. 715 (Bankr.D.Md.

2006). These cases manifest this policy rationale in allowing judgment creditors of a member to seek other remedies against a single-member LLC.

. . .

Michigan has not specifically addressed this issue either in the courts or by adopting laws specifically addressing single-member LLCs. However, Vulpina will argue in state court that it is not inappropriate to surmise that single-member LLCs can be treated differently than multi-member LLCs. Vulpina will most likely argue that, as reasoned in the *Albright* decision cited above, the overall policy of protecting the other non-debtor members of a LLC is moot where the LLC has a single member— there is simply no one else's interests to protect.

. . .

Michigan law is silent as to whether a charging order is the exclusive remedy available to creditors of single-member and multi-member LLCs. This silence leaves the question open as to whether Michigan courts will make a policy decision in favor of judgment creditors attempting to reach a single-member LLC or will strictly construe the statutory language.[32]

Vulpina responds by noting that the single-member LLC issue that the Debtor raises is an issue that no Michigan court has decided, and this very uncertainty means that Vulpina would be prejudiced if the Debtor's bankruptcy case were dismissed:

In his Post–Hearing Brief ..., the Debtor all but openly announces that if he is granted dismissal, he will immediately pursue the very course of action

---

**32.** Post–Hearing Brief in Support of Debtor's Motion to Dismiss Bankruptcy Case (Docket # 221) at 1–5 (emphasis added).

that Vulpina fears: seeking to limit the recovery that his creditors may obtain from his fraudulently transferred interest in Vinifera by invoking the limitation-of-remedies provision of Michigan's LLC statute.... [T]he authorities and argument contained in [the Debtor's Post–Hearing Brief] serve only to demonstrate that these are wholly uncharted waters in Michigan law—waters into which the Debtor proposes Vulpina be cast at his unilateral preference, after having been brought into this Court at the Debtor's unilateral preference over one-and-a-half years ago.

Neither party can be confident as to how the Michigan Supreme Court would rule on this issue. But that uncertainty alone is sufficient to demonstrate that dismissal would be prejudicial to the Debtor's creditors. Dismissing the bankruptcy would leave the parties no choice but to litigate this issue to a final decision in the regular civil courts, a process that would of itself impose significant costs and delay on Vulpina and the other creditors even if they ultimately prevailed. More importantly, Vulpina would face all of the downside risk of being forced to bring that question before a regular civil court: it currently has a guaranteed right under Section 550(a) of the Bankruptcy Code to recover the Debtor's membership interest in Vinifera for the benefit of the estate and creditors, but if forced to return to the regular civil courts, it would face a significant possibility that its remedies

would be more limited than those available in this Court.[33]

The Court does not share the uncertainty expressed by the parties about this issue of Michigan law. The Court is not aware of any reported Michigan case on the subject, and the parties have cited none. But this Court predicts, with a high degree of confidence, that the Michigan Supreme Court (and any other non-bankruptcy court) would hold that the Michigan charging-order statute, Mich. Comp. Laws § 450.4507, and its limitations on creditor remedies, *does* apply to single-member LLCs just as it applies to all other LLCs. The statute is unambiguous on this point.

By § 450.4507's repeated use of the term "a limited liability company," that statute clearly applies to all limited liability companies, including single-member ones. The term "limited liability company" is defined to mean "an entity that is an unincorporated membership organization formed under this act," *i.e.*, the "Michigan limited liability company act" (the "Act"). *See* Mich. Comp. Laws §§ 450.4102(2)(k); 450.4101. This definition in the Act draws no distinction between single-member LLCs and multiple-member LLCs.

Moreover, in the section right before the charging-order section, for a different purpose, the Act expressly distinguishes between "a limited liability company that has more than 1 member" on the one hand, and " "a limited liability company that has 1 member." *See* Mich. Comp. Laws § 450.4506(1).[34] This clearly shows

---

**33.** Vulpina's Post Hearing Brief in Further Support of Its Opposition to Debtor's Motion to Dismiss Bankruptcy Case (Docket # 226) at 1–2 (footnote omitted).

**34.** That subsection says:
450.4506. Assignees of membership interests
(1) Unless otherwise provided in an operating agreement, an assignee of a member-

ship interest in a limited liability company that has more than 1 member may become a member only upon a unanimous vote of the members entitled to vote. An assignee of a membership interest in a limited liability company that has 1 member may become a member in accordance with the terms of the agreement between the member and the assignee.

two things: (1) that the term "a limited liability company" as used in the Act, including in the charging-order section, § 450.4507, includes LLCs that have 1 member as well as those that have more than 1 member; and (2) when the legislature intended to create different rules for a single-member LLC, it did so expressly, as in § 450.4506(1). And there is nothing whatsoever in any section in the Act that indicates that the term "a limited liability company" as used in § 450.4507 does not include single-member LLCs.

Of the cases that the Debtor cites, all are from states other than Michigan, and none actually hold that a charging order statute does not apply to single-member LLCs. The Debtor cites two states (Florida and Utah) where the legislature has changed the LLC statute to expressly except single-member LLCs from the coverage of a charging-order statute's limitation of remedies. And the Debtor cites three other states (Delaware, Nevada, and Wyoming) where the legislatures have amended their LLC laws to explicitly state that single-member LLCs are subject to the same limitation of remedies as all other LLCs.[35] But none of this shows that Michigan's statute is ambiguous—it is not.

As quoted above, the Debtor's Post–Hearing Brief also makes a policy argument for not applying the remedy limitations of the Michigan charging-order statute to single-member LLCs. But such a policy argument cannot justify interpreting the Michigan statute contrary to the unambiguous meaning of its words. As this Court has noted in a previous case,

> Under Michigan law, "[w]here a statute is clear and unambiguous, judicial construction is precluded." *Frankenmuth Mut. Ins. Co. v. Marlette Homes, Inc.,*

456 Mich. 511, 573 N.W.2d 611, 613 (1998).... "A statute is ambiguous when reasonable minds can differ regarding its meaning." *Mayor of Lansing v. Michigan Pub. Serv. Comm'n,* 470 Mich. 154, 680 N.W.2d 840, 851 (2004) (citation omitted).

*In re Vinson,* 337 B.R. 147, 148–49 (Bankr. E.D.Mich.2006), *rev'd on other grounds,* 347 B.R. 620 (E.D.Mich.2006). And as noted above, the Debtor has cited three states (Delaware, Nevada, and Wyoming) that have explicitly amended their LLC statute in a way that necessarily *rejects* the Debtor's policy argument.

For the reasons discussed above, the Court concludes that it is very likely that Vulpina will suffer prejudice if this bankruptcy case is dismissed, Vulpina is forced to pursue its fraudulent transfer action regarding Vinefera a non-bankruptcy court, and Vulpina ultimately prevails in that action. Under that scenario, Vulpina will be left with an exclusive but substantially limited remedy for collecting its judgment, compared to the result Vulpina can obtain if it litigates and prevails in the fraudulent transfer within this bankruptcy case. In the former scenario, Vulpina would likely obtain little or nothing toward the satisfaction of its judgment against the Debtor. In the latter scenario, by contrast, Vulpina has a very real possibility of obtaining a substantial recovery on its judgment.

At this point, the Court cannot measure or quantify the precise extent of this prejudice to Vulpina if the bankruptcy case is dismissed. But that shortcoming falls on the Debtor, not Vulpina, because it is the Debtor's burden to demonstrate cause for the proposed dismissal. The Court concludes that this prejudice to Vulpina if the

(Emphasis added).

**35.** Debtor's Post–Hearing Br. (Docket # 221) at 3–5.

bankruptcy case is dismissed weighs strongly against finding cause to dismiss the bankruptcy case.

Before discussing other considerations, the Court must address a final argument about prejudice to Vulpina. The Debtor has argued that even if outside of bankruptcy Vulpina's collection remedies against the Vinifera membership asset *would* be limited by Michigan's charging-order statute, as Vulpina fears, that should not be viewed as *relevant* prejudice to Vulpina, because Vulpina would be in that same position if the Debtor had never filed bankruptcy. In other words, dismissal now, at most, would deprive Vulpina of a collection advantage that it did not have before Debtor filed bankruptcy—avoidance of the Michigan charging order statute's limitation of remedies. The Debtor handed Vulpina this collection advantage by filing bankruptcy, and so, Debtor seems to say, there is nothing unfair or improper in now taking that collection advantage away by dismissing the bankruptcy case.

The problem with this argument is that the Debtor voluntarily chose to file Chapter 7 bankruptcy, and has had the benefit of the automatic stay in bankruptcy for two years now. During that time Vulpina has been prevented from pursuing collection of its judgment in non-bankruptcy courts, and Vulpina has had to incur substantial attorney fees and expenses that it would not have incurred if Debtor had not filed bankruptcy. As a result, dismissal of this bankruptcy case could not possibly put Vulpina back in the same position it would have been in two years ago, as if the Debtor never filed bankruptcy. For these reasons, it is fair and equitable to measure prejudice in this way: what prejudice would Vulpina likely suffer if the bankruptcy case now were dismissed, compared to the position Vulpina would have if bankruptcy case continues? As a result, the

prejudice to Vulpina that the Court has found, discussed above, is *relevant* prejudice.

### 3. Other considerations

### a. The Debtor's time and expense burden of remaining in bankruptcy

In contrast to the prejudice Vulpina likely would suffer if the bankruptcy case is dismissed, the Debtor is unlikely to suffer any undue prejudice if the bankruptcy case is *not* dismissed.

The Debtor's stated reason for wanting to dismiss this bankruptcy case is to reduce the significant time and expense that the Debtor, his family, and his affiliated entities will continue to incur if the bankruptcy case continues. But the Court concludes that a dismissal of the bankruptcy case is unlikely to have much effect on reducing the Debtor's litigation time and expense. If the case is dismissed, Vulpina surely will continue its aggressive and comprehensive efforts to discover and collect from assets of the Debtor, including any undisclosed assets that Vulpina discovers, and Vulpina will continue to look for possible additional fraudulent transfer actions to pursue, in addition to pursuing the pending action regarding Vinifera. Outside of bankruptcy, Vulpina would continue to press the Debtor, his wife, and his related entities, and others, for discovery regarding the assets, financial affairs, and the transfers done by the Debtor and his related entities—the same type of discovery that Vulpina has been pursuing in this bankruptcy case and in its adversary proceeding objecting to the Debtor's discharge. There is likely to be little or no reduction in the scope, time, and expense of that discovery, whether the parties remain inside bankruptcy or are outside bankruptcy.

If anything, the expense may be much greater outside of bankruptcy, because one or both of the parties may ask a non-bankruptcy court to revisit many of the discovery-related rulings that this Court has already made. Because this Court's discovery-related orders are not final orders, a non-bankruptcy court may conclude that neither of the parties is precluded, by collateral estoppel, from relitigating their discovery disputes in a non-bankruptcy court, after a dismissal of the bankruptcy case.[36]

If the bankruptcy case remains pending, it is possible for the Debtor to reduce his burden of responding to and litigating Vulpina's adversary proceeding objecting to the Debtor's discharge. This would be possible if the Debtor agreed to waive his bankruptcy discharge as to Vulpina. In this way, the Debtor could remove the issue of discharge from litigation, and moot the pending § 727(a) adversary proceeding, even if the bankruptcy case otherwise remains pending.

In moving to dismiss the bankruptcy case, the Debtor says that he has decided that the burden of trying to litigate his way to a bankruptcy discharge of Vulpina's debt is more than the Debtor wants to bear going forward. But the Debtor can avoid all future cost of litigating for a discharge by simply waiving his discharge as to Vulpina, under 11 U.S.C. § 727(a)(10). That section states:

> (a) The court shall grant the debtor a discharge, unless—
>
> (10) The court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter[.]

The United States Court of Appeals for the Sixth Circuit has held that under this section, a bankruptcy debtor may waive a discharge with respect to a single individual debt—the Debtor does not have to waive a discharge entirely as to all creditors. *Lichtenstein v. Barbanel,* 161 Fed. Appx. 461, 465 (6th Cir.2005).

For all of these reasons, it makes no material difference to the Debtor's time-and-expense burden whether this bankruptcy case remains pending or not.

### b. Benefit to certain creditors other than Vulpina from the proposed dismissal

As described in Part IV of this opinion, the Debtor has resolved the Chapter 7 Trustee's limited objections to the motion to dismiss the bankruptcy case, by agree-

---

**36.** Discovery orders of the type the Court entered in this case are not final orders. *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.,* 444 F.3d 462, 471 (6th Cir.2006) (citation omitted)("Discovery orders generally are not final decisions and cannot be reviewed unless the trial court enters a final judgment disposing of all claims."); *Adapt of Philadelphia v. Philadelphia Housing Author.,* 433 F.3d 353, 360 (3rd Cir.2006) (citations omitted)("Discovery orders are not final decisions within the meaning of 28 U.S.C. § 1291."); *A–Mark Auction Galleries v. Am. Numismatic Ass'n,* 233 F.3d 895, 897 (5th Cir.2000) (citation omitted)("[D]iscovery orders do not constitute final decisions under [28 U.S.C.] § 1291 and are not immediately appealable."); *MDK, Inc. v. Mike's Train House, Inc.,* 27 F.3d 116, 119 (4th Cir.1994) (citations omitted)("[A]ppellate review will generally be limited to decisions 'which end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment.' Discovery orders generally do not meet this requirement.").

Because the discovery orders are not final orders, arguably they would not have preclusive effect in a non-bankruptcy court after a dismissal of this bankruptcy case. Under Michigan law of collateral estoppel, for example, an order must be a final order or final judgment in order to have preclusive effect in later litigation. *See, e.g., McCallum v. Pixley (In re Pixley ),* 504 B.R. 852, 857 (Bankr. E.D.Mich.2014).

ing to pay the Trustee enough money to pay administrative expenses *plus* the full amount of the filed claims of two creditors—Marlin Business Bank ($850.37) and American Express Centurion Bank ($5,733.96). Under this proposed dismissal, these two creditors, and allowed administrative expenses, will be paid in full. But Vulpina, by far the estate's largest creditor, and Vulpina's affiliates, who have filed unliquidated claims in this case (Continental Vineyard LLC and Indeck–Paso Rolbes LLC) will be paid nothing. So a dismissal on these terms would benefit the Chapter 7 Trustee, Trustee's counsel, and two of the five creditors who have filed proofs of claim. But such benefit to some but not all of the creditors must be considered a factor weighing *against* the Debtor's motion to dismiss.

As Vulpina argues, such a dismissal would subvert one of the fundamental objectives of bankruptcy law, namely that similarly situated creditors be treated equally in distributions in a Chapter 7 case. Vulpina and its two affiliates are non-priority unsecured creditors, with the same priority level as the two creditors that would be paid in full under the Debtor's proposed dismissal. Those two creditors would be paid in full, but Vulpina and its affiliates would receive nothing. Such a result is clearly contrary to the distribution scheme under 11 U.S.C. § 726(a)(2), which would require that an equal percentage dividend be paid to each creditor with an allowed non-priority unsecured claim.

Such a result is improper, at least when, as here, one of the disfavored creditors (Vulpina) objects. In effect, the Debtor's proposed dismissal would result in a reordering of priorities, which is one of the factors that cases recognize as disfavoring a voluntary dismissal under § 707(a). *See* cases quoted in Part V.A. of this opinion (*Barry v. Sommers (In re Cochener )*, 382

B.R. at 337–39; *Hopper*, 404 B.R. at 308); *see generally Pension Benefit Guaranty Corp. v. Belfance (In re CSC Indus., Inc.)*, 232 F.3d 505, 508 (6th Cir.2000)(citing 11 U.S.C. § 1123(a)(4))("[A] fundamental objective of the Bankruptcy Code is to treat similarly situated creditors equally."); *In re Warren*, 181 B.R. 136, 139 (Bankr.N.D.Ala.1995)(denying a joint motion by the debtor and the petitioning creditors to dismiss an involuntary bankruptcy, because the proposed settlement did not pay similarly situated creditors equally).

The Debtor argues that there is nothing improper about such unequal treatment of creditors with the same priority. This is so, the Debtor says, because a bankruptcy debtor is permitted to pick and choose creditors to pay on a voluntary basis. *See* 11 U.S.C. § 524(f)("Nothing contained in subsection (c) or (d) of this section [regarding reaffirmation agreements] prevents a debtor from voluntarily repaying any debt.") In § 524(f), the Bankruptcy Code recognizes that *a debtor* may voluntarily repay a discharged debt, without making a reaffirmation agreement with a creditor. This is quite different from saying that the Bankruptcy Court may approve a scheme of unequal distributions to creditors *by a Chapter 7 Trustee, as a condition of dismissing a Chapter 7 case, and over the objection of a disfavored creditor*, that is inconsistent with the priority scheme of § 726(a)(2). The Debtor has cited no authority that would permit this.

**4. On balance, other relevant factors do not favor dismissal of this bankruptcy case.**

The Court has considered all of the other factors that courts have found relevant to a debtor's motion to voluntarily dismiss a Chapter 7 bankruptcy case. *See* cases cited in Parts V.A and V.B of this opinion.

On balance, these other factors, and the considerations discussed above, weigh strongly against the Court finding cause under § 707(a), or a basis under § 305(a)(1), to dismiss this bankruptcy case over Vulpina's objection. And with respect to § 305(a)(1), the Debtor has failed to demonstrate that "the interest of the creditors and the debtor will be better served by" dismissal of this case. The Court will exercise its discretion regarding the Motion by denying it.

## VI. Conclusion

For the reasons stated in this opinion, the Court will enter an order denying the Debtor's Motion to dismiss this bankruptcy case.